**Edward N. MAURER, Estate of Ely Maurer, Russell A. Maurer and Stephen B. Maurer, Petitioners,**

v.

**OFFICE OF PERSONNEL MANAGEMENT, Respondent.**

**No. 00–3100.**

United States Court of Appeals, Federal Circuit.

Jan. 17, 2001.

Edward N. Maurer, of Lido Beach, New York, argued for petitioners.

Mark L. Josephs, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for respondent. With him on the brief were David W. Ogden, Assistant Attorney General; David M. Cohen, Director; and Kathryn A. Bleecker, Assistant Director.

Before LOURIE, SCHALL, and BRYSON, Circuit Judges.

BRYSON, Circuit Judge.

The four petitioners—Edward N. Maurer, the estate of Ely Maurer, Russell A. Maurer, and Stephen B. Maurer—seek additional interest on payments made by the government relating to funds withheld

from the pay of Ely Maurer during his service as a federal employee. The Merit Systems Protection Board held that no additional interest on the payments is due, and we agree.

## I

Ely Maurer died on June 25, 1997, after almost 59 years of federal service. Under the Civil Service Retirement System (CSRS), in which Mr. Maurer participated, an employee typically reaches the maximum annuity level after approximately 42 years of service. Mr. Maurer reached that mark in June 1980.

After an employee reaches the maximum annuity level, mandatory retirement deductions continue to be withheld from the employee's pay, but because the employee's annuity level does not increase, those deductions are considered "excess deductions" and are subject to refund under 5 U.S.C. § 8342(h). In Mr. Maurer's case, excess deductions were made between June 1980 and his death in 1997.

Pursuant to section 8342(h), OPM proposed to pay a refund of the excess deductions to petitioners. OPM calculated the refund to be equal to the excess deductions, plus interest at three percent a year compounded annually to the date of Mr. Maurer's death. OPM did not propose to pay any interest for the period between Mr. Maurer's death and the actual payment of the refund. The petitioners disagreed with OPM's interest calculation, both with respect to the amount of interest payable for the period before 1997 and with respect to OPM's decision not to pay any interest for the period after 1997. After considering the petitioners' claim for additional interest, OPM denied the claim.

The petitioners sought review by the Merit Systems Protection Board. An administrative judge upheld OPM's decision, concluding that the relevant statutory provisions were ambiguous but that OPM's interpretation of those provisions was reasonable and thus entitled to deference. The petitioners then sought review by the full Board. The Board denied the petition,

but reopened the appeal on its own motion and affirmed the initial decision after concluding that the relevant statutes unambiguously provided for three percent interest to the date of Mr. Maurer's death and no interest after that date.

## II

1. The petitioners' principal argument is that OPM and the Board misinterpreted the applicable federal statutes by concluding that interest on the excess deductions should be paid at the fixed rate of three percent per year between 1980 and 1997. Instead, they argue, interest should be paid at a rate of three percent per year through 1984 and thereafter at a variable rate.

The statutes that govern this dispute are 5 U.S.C. § 8342(h) and 5 U.S.C. § 8343(a). Section 8342(h), which deals with lump-sum payments based on excess retirement deductions from a federal employee's pay, provides as follows:

> Amounts deducted ["excess deductions"] ..., together with interest on the amounts at the rate of 3 percent a year compounded annually from the date of the deductions to the date of retirement or death, shall be applied toward any deposit due under section 8334 of this title, and any balance not so required is deemed a voluntary contribution for the purpose of section 8343 of this title.

Section 8343(a), which provides for voluntary retirement contributions and designates the manner of calculating the amount in an employee's voluntary contribution account, provides as follows:

> The voluntary contribution account in each case is the sum of unrefunded contributions, plus interest at 3 percent a year through December 31, 1984, and thereafter at [a variable rate], compounded annually....

The petitioners argue that because section 8342(h) "deems" the excess deductions to be voluntary contributions, the amount to be repaid must be calculated according to

section 8343(a), which includes the variable interest rate for contributions made after 1984.

We agree with the Board that the proper construction of these statutes is that interest on excess deductions is paid at the rate of three percent per year throughout the period during which the deductions are made. The text of section 8342(h) makes this clear. It provides for a repayment of excess deductions to be calculated as follows: the calculation begins with each of the excess deductions taken during the employee's federal service; each such deduction is increased by interest calculated at three percent a year compounded annually from the date of the deduction to the date of retirement or death; all of the excess deductions, plus interest, are summed; a deduction is then taken from that sum to cover any deposit due under 5 U.S.C. § 8334; the remainder after that deduction, if any, is "deemed a voluntary contribution" within the meaning of 5 U.S.C. § 8343. If, as in this case, the employee dies before retiring, his voluntary contribution account is paid to his beneficiaries in accordance with 5 U.S.C. § 8342(c). *See* 5 U.S.C. § 8343(e). Under this scheme, there is no occasion for the variable interest rate in section 8343(a) to apply, because the amount designated by section 8342(h) is not calculated, and thus is not "deemed" a voluntary contribution, until the excess deductions cease, which occurs when the employee retires or dies.

The petitioners argue that the three percent interest rate provided by 8342(h) applies only to the calculation of the "deposit due under section 8334," and not to the rest of the excess deductions, which are to be treated as voluntary contributions for all purposes, including the calculation of interest. Under the petitioners' proposed construction of section 8342(h), OPM should have performed the following steps: It should have begun with two numbers that are not in dispute—Mr. Maurer's total excess deductions of $95,734, and his section 8334 deposit, which totaled $2,185 after interest was added. OPM then should have used the three percent inter-

est rate set forth in section 8342(h) to determine what portion of the excess deductions would have been required to be set aside in 1980 so that by 1997, calculating interest at the fixed rate of three percent, the designated portion of the deductions plus interest would come to $2,185. According to the petitioners' calculations, that portion would be $1,332 in Mr. Maurer's case. Under the petitioners' analysis, that is the only portion of the excess deductions to which the fixed rate of three percent in section 8342(h) should apply. Then, having constructively set aside that $1,332 portion of the excess deductions, OPM should have deemed the remaining portion of Mr. Maurer's excess deductions ($95,734 minus $1,332) to be a voluntary contribution, and it should have applied the variable interest rate of section 8343(a) to that remaining amount.

As is clear from the foregoing description, the petitioners' construction of the statutory scheme leads to convoluted calculations. More importantly, however, it is contrary to the most natural reading of the statutory language. The phrase "amounts deducted and withheld" from the employee's pay refers to all the amounts deducted after the employee has earned the maximum annuity. Those "amounts deducted and withheld"—not some subset of those amounts—are expressly made subject to the three percent interest calculation, as the interest clause specifically refers to "interest on *the amounts* at the rate of 3 percent a year." 5 U.S.C. § 8342(h) (emphasis added). It is that resulting amount—the excess deductions plus three percent interest on those deductions—that is the minuend from which the section 8334 deposit is subtracted to produce the "balance" referred to in section 8342(h). Accordingly, the "balance" includes not only the "amounts deducted," but also the three percent interest on those amounts. Nothing in section 8342(h) suggests that interest is calculated only on whatever portion of the "amounts deducted and withheld" is necessary to cover the section 8334 deposit and not the rest.

The petitioners contend that Congress must have intended the "deemed" clause in section 8342(h) to incorporate the interest provision of section 8343, and that Congress would not have treated the excess deduction balances as voluntary contributions solely in order to make it possible for employees with excess deduction balances to enjoy the same annuity—purchase benefits that were accorded to employees making voluntary contributions. The legislative history of section 8342(h), however, indicates the contrary—that Congress elected to treat excess deductions as voluntary contributions for the express purpose of allowing retirees with excess deduction balances to purchase additional annuities in the same manner as retirees who had made voluntary contributions to the retirement fund. *See* H.R.Rep. No. 86–1916, at 2 (1960), *reprinted in* 1960 U.S.C.C.A.N. 2958, 2959. Nothing in the legislative history suggests that Congress intended, as the petitioners argue, that a portion of an employee's excess deductions would be subject to the fixed interest rate of section 8342(h) and a portion would be subject to the variable interest rate of section 8343(a).

Finally, the petitioners rely on the policy underlying the 1982 amendment to section 8343(a) that changed the interest rate for voluntary contributions from a fixed rate of three percent to the present variable rate. They assert that the purpose of the amendment was to set aside an interest rate that was "unreasonably low" and that parity between the two statutes requires that the three percent rate in section 8342 also be set aside as unreasonably low. General notions of parity, however, cannot overcome the clear statutory language. Section 8342(h) does not state that each excess deduction will be treated as if it were a voluntary contribution, but instead provides a means for calculating a particular sum that is then treated as a voluntary contribution. In the course of that calculation, the statute provides that the interest rate to be applied to the excess deductions is three percent. Congress could change that governing rule, but it has not yet done

so, and until it does we are not free to deviate from the statutory prescription.

2. The petitioners make a separate argument that interest is due for the period between the date of Mr. Maurer's death and the date that OPM actually paid the benefits. The Board concluded that post-death interest is not payable under the statute, and once again we agree.

After an employee's death, the balance of the employee's excess deductions is deemed a voluntary contribution and thus is subject to any post-death interest provided for voluntary contributions in section 8343. However, section 8343(a)(1) makes clear that post-death interest is not payable on voluntary contributions. The statute provides that interest is paid "to the date of payment . . ., separation, or transfer." 5 U.S.C. § 8343(a)(1). Although separation is not specifically defined to include death, the term "separation" in employment and retirement contexts is commonly understood to include death. For example, 5 U.S.C. § 8333(b), within the same subchapter of the United States Code, provides that an employee seeking an annuity must take certain actions "before any separation from service, except a separation because of death or disability." The fact that section 8333(b) specifically excludes separation by death indicates that the term "separation," as used in the federal retirement statutes, generally includes death.

The petitioners argue that the term "separation" cannot include death, because in some of its applications the term "separation" in sections 8343(a)(2) and 8343(d) would be nonsensical if separation meant death. For example, section 8343(d) refers to an employee who returns to work after separation, which of course excludes employees whose separation was the result of death. But this argument has little force. The fact that for some purposes a term does not apply to all persons within the term's definition does not mean that the definition must be wrong. If a medical benefit statute covered all "employees"

and provided, among its benefits, medical care in childbirth, that would not mean the that term "employees" would have to be construed to exclude men. The Board correctly held that section 8343(a)(2) does not authorize the payment of interest for the period after Mr. Maurer's death, and where the payment of interest by the government is not authorized, it is barred, *see Library of Cong. v. Shaw*, 478 U.S. 310, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986).

*AFFIRMED.*