NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**JOHN B. LEPORE,**
*Petitioner*

**v.**

**OFFICE OF PERSONNEL MANAGEMENT,**
*Respondent*

---

2018-1474

---

Petition for review of the Merit Systems Protection Board in No. DC-0831-17-0683-I-1.

---

Decided: January 9, 2019

---

NORMAN JACKMAN, Jackman & Roth, LLP, Lincoln, NH, for petitioner.

REBECCA SARAH KRUSER, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by REGINALD THOMAS BLADES, JR., ROBERT EDWARD KIRSCHMAN, JR., JOSEPH H. HUNT.

---

Before MOORE, REYNA, and WALLACH, *Circuit Judges.*

PER CURIAM.

Petitioner John Lepore seeks review of a final decision of the Merit Systems Protection Board ("MSPB"), which affirmed the Office of Personnel Management ("OPM")'s denial of his claim that it miscalculated his retirement annuity. *See Lepore v. Office of Pers. Mgmt.* (*Lepore III*), No. DC-0831-17-0683-I-1, 2017 MSPB LEXIS 4665, at *1 (Nov. 2, 2017).[1] We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9) (2012). We affirm.

## BACKGROUND[2]

Mr. Lepore was employed with the U.S. Department of the Treasury and the U.S. Department of Justice for more than twenty years, J.A. 28, 39, over seven of which were in "[l]aw [e]nforcement [s]ervice," J.A. 39; *Lepore III*, 2017 MSPB LEXIS 4665, at *1. Effective on or about April 16, 1983, Mr. Lepore retired under the disability provisions under the Civil Service Retirement System ("CSRS") as authorized by the Civil Service Retirement Act of 1920, which is administered by OPM. *See id.*; *see also* Pub. L. No. 66-215, 41 Stat. 614 (codified as amended at 5 U.S.C. §§ 1308, 2102, 2107, 3323, 8331–8348 (2012));

---

[1] An administrative judge ("AJ") issued an initial decision on November 2, 2017, *see* J.A. 1–12, which became final when Mr. Lepore did not file a petition for review, *see* J.A. 5; *see also* 5 C.F.R. § 1201.113 (2018) (providing "[t]he initial decision of the [AJ] will become the [MSPB]'s final decision [thirty-five] days after issuance" unless, inter alia, "any party files a petition for review"). Therefore, we refer to the Initial Decision as the MSPB's Final Decision.

[2] Unless otherwise noted, we refer to the relevant and undisputed facts of the case as put forth by the MSPB in *Lepore III*. *See* 2017 MSPB LEXIS 4665, at *1–3. *See generally* Pet'r's Br.; Resp't's Br.

5 U.S.C. § 8336(c)(1) (providing "entitle[ment] to annuity" for a federal "employee who is separated from the service after becoming [fifty] years of age and completing [twenty] years of service as a law enforcement officer"); *see* J.A. 42−48, 52−58 (Individual Retirement Records).[3] Upon his disability retirement, his title was that of Criminal Investigator. *See Lepore III*, 2017 MSPB LEXIS 4665, at \*1; J.A. 31. Thereafter, Mr. Lepore received a federal retirement annuity. *See, e.g.,* J.A. 40−41 (providing OPM's calculation of "[p]aid and [d]ue" annuity for Mr. Lepore).[4]

---

[3] CSRS was replaced by the Federal Employees' Retirement System ("FERS") Act of 1986. *See* Pub. L. No. 99-335, 100 Stat. 514 (codified at 5 U.S.C. §§ 8343a, 8349, 8350–8351, 8401–8479). "FERS was designed to improve upon CSRS, with the disability section in particular having minimal differences to CSRS." *Springer v. Adkins*, 525 F.3d 1363, 1367 (Fed. Cir. 2008) (citing S. Rep. No. 99–166, at 21 (1985), *as reprinted in* 1986 U.S.C.C.A.N. 1405, 1426) ("To minimize differences from the CSRS, the majority of standards and procedures applicable to the [FERS] are identical to those of the CSRS.").

[4] A former federal employee's retirement annuity is based upon the employee's length of service and average salary, where a federal employee's average salary refers to the three highest paying years used to calculate the average pay. 5 U.S.C. § 8339 (outlining computation of annuity); *see id.* § 8331(4) (defining "average pay" as "the largest annual rate resulting from averaging an employee's . . . *rates of basic pay in effect over any* [*three*] *consecutive years of creditable service*" (emphasis added)). "The three highest paying years" used to calculate average pay is also referred to as the "high-3." *Killeen v. Office of Pers. Mgmt.*, 382 F.3d 1316, 1318 (Fed. Cir. 2004) (internal quotation marks omitted).

In April 2016, Mr. Lepore appealed OPM's denial of his request to recalculate his retirement salary in favor of an enhanced annuity. *See Lepore v. Office of Pers. Mgmt.* (*Lepore I*), No. DC-0831-16-0484-I-1, 2016 MSPB LEXIS 2659, at *1 (May 3, 2016). Shortly thereafter, OPM stated it "was rescinding its final decision at issue," and the MSPB promptly dismissed *Lepore I* for lack of jurisdiction. *Id.* Then, in August 2016, upon OPM's affirmance of its initial recalculation denial decision, Mr. Lepore again appealed to the MSPB for recalculation of the disability gross annuity, arguing that he should be afforded an enhanced disability annuity based upon his service as a law enforcement officer. *See Lepore v. Office of Pers. Mgmt.* (*Lepore II*), No. 0831-16-0801-I-1, 2017 MSPB LEXIS 931, at *1–2 (Feb. 28, 2017).

In October 2016, OPM notified Mr. Lepore that he was "entitled to enhanced disability retirement benefits," *id.* at *2; *see* J.A. 38–39 (letter from OPM), "in view of a series of court cases that have changed the way a disability annuity is calculated when employees have performed service in positions that are usually tied to higher retirement deduction rates and to higher annuity accrual rates," J.A. 38. Accordingly, OPM calculated a new, increased annuity gross rate and authorized issuance of a one-time retroactive adjustment payment of $99,054.03 "for the amounts [Mr. Lepore] should have been receiving since [his] earned annuity commenced as of September 2, 1982." J.A. 38. Mr. Lepore unsuccessfully sought reconsideration of OPM's October 2016 recalculation, arguing he was entitled to (1) interest on the one-time retroactive payment and (2) payment for administratively uncontrollable overtime ("AUO") in the recalculation of his "high-3" average salary. *See Lepore II*, 2017 MSPB LEXIS 931, at *2.

In February 2017, the AJ remanded the matter to OPM because the AJ was "unable to ascertain from the record whether AUO should have been included in the

agency's determination of [Mr. Lepore]'s high-3 salary." *Id.* at \*9. On remand, OPM issued a June 2017 reconsideration decision affirming its October 2016 decision. J.A. 23−26. OPM determined that Mr. Lepore's "high-3 . . . average salary was computed correctly, and accurately, and in accordance with applicable laws and regulations." J.A. 24; *see* J.A. 24 (finding that "during [Mr. Lepore's] high-3 average salary period[, his] pay rate included varying premium pay in amounts equal to 10%, 20%, or 25%," and concluding that therefore the "premium pay was properly included as basic pay in the calculation of [Mr. Lepore's] high-3 salary"), 26 (including, by OPM, an "Average Salary Computation" as "Prepared for: [Mr.] Lepore" for the relevant years of 1979−82).[5]

In July 2017, Mr. Lepore appealed OPM's June 2017 Reconsideration Decision to the MSPB. J.A. 16−22. Specifically, he asserted that OPM had "miscalculated" his retirement annuity because "[h]e was not given credit . . . in the amount of [25%[6]] for *each* of his years of law enforcement service for AUO overtime." J.A. 20 (emphasis added); *see* J.A. 28 (stating, in Mr. Lepore's affidavit,

---

[5] While the June 2017 Reconsideration Decision initially incorrectly stated that the time period used to compute Mr. Lepore's average salary was "February 1, 2010, through January 13, 2010," J.A. 23, this mistake was immediately corrected by amendment such that the "correct period is September 2, 1979 through September 1, 1982," J.A. 30; *see* J.A. 26 (employing the correct 1979−82 time period in OPM's Average Salary Computation table).

[6] Mr. Lepore originally identified "2.5%" in his MSPB appeal. J.A. 20. However, based upon the record below and the briefings on appeal, the parties do not dispute that Mr. Lepore actually intended to request 25%. *See, e.g.*, Pet'r's Br. 9; Resp't's Br. 6–7.

that "during all of my '[high]-3' years I worked what is called [AUO], more than [nine] hours per week"). Mr. Lepore further argued that nothing on the record "show[s] the addition of AUO to the base pay," J.A. 60, and that "[b]ecause the AUO always exceeded 25%, that percentage is what *must be added* to [his] 'rate of basic pay,'" J.A. 61 (emphasis added).

In November 2017, the MSPB affirmed OPM's June 2017 Reconsideration Decision, *Lepore III*, 2017 MSPB LEXIS 4665, at *1, determining that OPM's recalculation of Mr. Lepore's federal annuity was "accurate," *id.* at *6, in light of OPM's previously provided "Average Salary Computation worksheet," *id.* at *5 (citing J.A. 26). Specifically, the MSPB found that the Individual Retirement Records "certified by the Department of Justice" prove that the "rate of basic pay" listed on Mr. Lepore's Individual Retirement Records "*includes* premium pay or AUO." *Id.* at *5–6; *see* J.A. 42−48, 51−58 (Individual Retirement Records). The MSPB concluded that Mr. Lepore did not meet his burden, because, inter alia, he "ha[d] not referred to any law, rule, or regulation that demonstrates OPM was incorrect in utilizing its method of calculating his annuity." *Id.* at *6.

DISCUSSION

I. Standard of Review and Legal Standard

We will uphold a decision of the MSPB unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "unsupported by substantial evidence." 5 U.S.C. § 7703(c)(1), (3); *see Grover v. Office of Pers. Mgmt.*, 828 F.3d 1378, 1382 (Fed. Cir. 2016) (applying § 7703(c) to review an MSPB decision). Findings of fact are reviewed for substantial evidence. *See Crawford v. Dep't of the Army*, 718 F.3d 1361, 1365 (Fed. Cir. 2013). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Shapiro v. Soc. Sec. Admin.*, 800

F.3d 1332, 1336 (Fed. Cir. 2015) (internal quotation marks and citation omitted). "The petitioner bears the burden of establishing error in the [MSPB]'s decision." *Harris v. Dep't of Veterans Affairs*, 142 F.3d 1463, 1467 (Fed. Cir. 1998).

In accordance with statutory authority, a former federal employee's monthly retirement annuity is calculated using "average pay," which is defined as "the largest annual rate resulting from averaging an employee's . . . rates of basic pay in effect over any [three] consecutive years of creditable service," commonly referred to as the high-3 average salary years. 5 U.S.C. § 8331(4) (internal quotation marks omitted); *see Killeen*, 382 F.3d at 1318. "[B]asic pay" is defined by § 8331(3), which states that basic pay may include, inter alia, certain types of premium pay provided for under 5 U.S.C. § 5545(c). 5 U.S.C. § 8331(3) (internal quotation marks omitted).

Law enforcement officers are eligible to receive a special form of overtime compensation, defined as a type of premium pay under § 5545(c)(2), referred to as AUO. *See* 5 U.S.C. § 5545(c)(2) (describing AUO and providing that an employee "in a position in which the hours of duty cannot be controlled administratively, and which requires substantial amounts of irregular, unscheduled overtime duty[,] . . . shall receive premium pay for this duty"). This AUO premium pay is "an appropriate percentage, *not less than* [*ten*] *percent nor more than* [*twenty-five*] *percent*, of the rate of basic pay for the position, as determined by taking into consideration the frequency and duration of irregular, unscheduled overtime duty required in the position." *Id.* (emphasis added).

II. The MSPB Correctly Affirmed OPM's Recalculation of Mr. Lepore's Federal Retirement Annuity Because OPM's June 2017 Recalculation Decision Took into Account the Premium Pay for AUO

The MSPB determined that OPM properly recalculated Mr. Lepore's rate of basic pay to include AUO using the Department of Justice's certified salary rates. *Lepore III*, 2017 MSPB LEXIS 4665, at *5–6 (citing J.A. 23). Mr. Lepore's main contention is that OPM improperly calculated his high-3 average salary by not including AUO as part of his basic pay. *See* Pet'r's Br. 8−10. Mr. Lepore asserts that there was "no evidence that AUO was included in the annuity calculation." *Id.* at 8 (formatting modified). We disagree with Mr. Lepore.

Substantial evidence supports the MSPB's decision that OPM properly recalculated Mr. Lepore's retirement salary and annuities to include AUO. *See Lepore III*, 2017 MSPB LEXIS 4665, at *5–6; *see also* J.A. 26 (OPM's Average Salary Computation worksheet). The parties agree that Mr. Lepore was a "law enforcement officer" as defined in § 8331 (20), *see generally* Pet'r's Br.; Resp't's Br., and as such, was entitled to receive AUO as a type of premium pay when warranted, *see* 5 U.S.C. §§ 5545(c)(2), 8331(3)(D); 5 C.F.R. § 550.141 (providing authorization of premium pay on an annual basis). On relevant pages of Mr. Lepore's retirement records during the period of his high-3 average salary years, there are numerous notations in the "remarks" column of the tables expressly stating that Mr. Lepore obtained percentage adjustments of "10%," "20%," or "25%" of premium payment included. *See, e.g.*, J.A. 54 (including an action, on January 10, 1982, with the notation "20% PRM PY INCL"), 55 (awarding, on October 4, 1981, a "MERIT INCREASE" and noting "25% PRM PY INCL"). These are the same range of percentages that an employee can receive as AUO. *See* 5 U.S.C. § 5545(c)(2) (stating that AUO "premium pay" is "an appropriate percentage, *not less than* [*ten*] *percent nor*

*more than* [*twenty-five*] *percent*, of the rate of basic pay for the position" (emphasis added)). Therefore, substantial evidence supports the MSPB's decision to affirm OPM's June 2017 Reconsideration Decision that found its calculations already included AUO as part of Mr. Lepore's basic pay.

Mr. Lepore's counterarguments lack merit. First, Mr. Lepore contends that these rates are somehow incorrect or that he did not actually receive premium pay as part of his basic pay. *See* Pet'r's Br. 9 (referencing J.A. 62–66, which provide rates of pay in a document that he offered as supporting evidence and is titled the "Rates of Pay Under the General Schedule" for the years 1978 to 1982). We disagree. The *generalized* rates of pay that Mr. Lepore would prefer we rely upon, as found in the "Rates of Pay Under the General Schedule" for the years 1978 to 1982, do not contradict or inform our understanding of the evidence of the Government-*certified* premium pay rates that were awarded specifically to Mr. Lepore, as discussed above. *See* J.A. 62−66; *cf. Grover*, 828 F.3d at 1384 (finding that OPM relied upon "internally contradictory" Individual Retirement Records, and therefore remanding to the MSPB for further evidentiary gathering and determination of overtime pay). Rather, the MSPB properly considered all evidence of record related to Mr. Lepore's annuity recalculation, including when it specifically compared the salary rates in the Government-certified Individual Retirements Records with the General Schedule pay rates provided by Mr. Lepore, and found the former to be the only correct and "accurate" evidence of Mr. Lepore's pay rate. *Lepore III*, 2017 MSPB LEXIS 4665, at *6; *see id.* ("[T]he [Individual Retirement Records] salary includes premium pay or AUO in the basic rate of pay."). We have previously approved such reliance upon internally consistent individual retirement records as proper. *See Thomas v. Office of Pers. Mgmt.*, 350 F. App'x 448, 450 (Fed. Cir. 2009) (affirming the MSPB's

decision that OPM could rely only on certified individual retirement records, rather than petitioner's evidence of tax forms, emails, and pay stubs).

Second, Mr. Lepore argues OPM's decision is contrary to our opinion in *Springer*. Pet'r's Br. 10; *see* 525 F.3d at 1367. However, *Springer* is inapposite. *Springer* involved the resolution of whether the plain language of "FERS [§] 8415 concerning firefighters' annuities . . . in view of the legislative intent disallow[ed] incorporation of the age and years of service requirements of [§] 8412(d)" when calculating an enhanced annuity retirement. *Id.* at 1367. Here, Mr. Lepore did not raise, and does not raise on appeal, a similar statutory argument; instead, he challenges the factual finding regarding the calculation of his high-3 average salary. *See* J.A. 20 (asserting that OPM had "miscalculated [Mr. Lepore's] retirement annuity" because "[h]e was not given credit . . . in the amount of [25%] for each of his years of law enforcement service for AUO overtime"). Moreover, OPM found that Mr. Lepore met all necessary requirements under the relevant CSRS statutory scheme and related case precedent, and award-ed enhanced annuity *in his favor* in the sum of $99,054.03. *See* J.A. 38. We find OPM's recalculated annuity in favor of Mr. Lepore does not violate our prece-dent in *Springer*.

Third, Mr. Lepore also raises three additional argu-ments on appeal. *See* Pet'r's Br. 11 (arguing that correc-tion of the "starting date of [his] retirement should be accepted as April 16, 1983," and that he is entitled to "pre-judgment interest on the [back] payment made to [him] after a wait of 34 years"), 13 (arguing that "[Mr. Lepore] should be reimbursed for his attorney's fees"). Regarding Mr. Lepore's starting date, this argument was never raised before the MSPB in the proceedings below, *see generally* J.A. 16–22 (Mr. Lepore's appeal form), and is therefore waived, *see Bosley v. Merit Sys. Prot. Bd.*, 162 F.3d 665, 668 (Fed. Cir. 1998) ("A party in an MSPB

proceeding must raise an issue before the administrative judge if the issue is to be preserved for review in this court."). Regarding Mr. Lepore's pre-judgment interest claim, we have held that "where the payment of interest by the government is not authorized, it is barred." *Maurer v. Office of Pers. Mgmt.*, 236 F.3d 1352, 1356 (Fed. Cir. 2001). Mr. Lepore cites no law, statute, or case authority that would allow prejudgment interest in his case. Mr. Lepore also cites no authority to support his claim for attorney fees, which he makes for the first time in the conclusion section of his opening brief. We deem this claim waived. *See* Pet'r's Br. 11, 13. The MSPB properly upheld OPM's retirement annuity recalculation.

CONCLUSION

We have considered Mr. Lepore's remaining arguments and conclude that they are without merit. For the reasons stated above, the Final Decision of the Merit Systems Protection Board is

**AFFIRMED**