# UNITED STATES OF AMERICA
# MERIT SYSTEMS PROTECTION BOARD

KATHLEEN DONELSON-
    WESTOVER,
                Appellant,

        v.

OFFICE OF PERSONNEL
    MANAGEMENT,
                Agency.

DOCKET NUMBER
DE-0845-17-0017-I-1

DATE: March 16, 2023

# THIS ORDER IS NONPRECEDENTIAL[1]

John B. Westover, Fort Collins, Colorado, for the appellant.

Alison Pastor, Washington, D.C., for the agency.

## BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member[2]

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

[2] Member Leavitt's name is included in decisions on which the three-member Board completed the voting process prior to his March 1, 2023 departure.

**REMAND ORDER**

¶1      The appellant has filed a petition for review of an initial decision that dismissed as untimely filed her appeal of a reconsideration decision issued by the Office of Personnel Management (OPM) finding that she was overpaid $60,201 in Federal Employees' Retirement System (FERS) annuity benefits.  For the reasons set forth below, we GRANT the petition for review, REVERSE the initial decision, and REMAND the appeal to the Denver Field Office for adjudication on the merits.

**BACKGROUND**

¶2      In an initial decision dated September 15, 2013, OPM informed the appellant that she had been overpaid $60,201 in FERS retirement benefits.  Initial Appeal File (IAF), Tab 9 at 32.  The appellant promptly requested reconsideration and sought waiver of collection of the overpayment.  *Id.* at 28-30.  Nearly 3 years later, on August 15, 2016, OPM denied the appellant's reconsideration request and found that she was not entitled to waiver of collection of the overpayment, but modified the repayment schedule.[3]  *Id.* at 8-11.  The letter informed the appellant that OPM would commence collecting the overpayment unless she timely filed an appeal with the Board within 30 calendar days from the date of the letter, or from her receipt of the letter, whichever was later.  *Id.* at 11.

¶3      On September 23, 2016, the appellant filed the instant appeal challenging OPM's reconsideration decision and requesting a hearing.  IAF, Tab 1.  In an

---

[3] In a June 29, 2016 letter, OPM requested updated financial information from the appellant and provided a Financial Resources Questionnaire for the appellant to complete and return.  IAF, Tab 9 at 21.  OPM's letter indicated that it would issue a final decision within 30 days based on the existing documentation if the requested information was not received within 30 days from the date of the letter.  *Id.* at 21.  The appellant's response is dated August 1, 2016, and the envelope appears to bear an August 10, 2016 postmark.  *Id.* at 13, 18-20.  At no point, however, has OPM argued that the appellant's response to that letter was not timely submitted.  *Id.* at 13-19.  Nothing in OPM's letter suggested that issuance of a reconsideration decision was imminent if the appellant provided the additional information.  *Id.* at 21.

order on timeliness, the administrative judge noted that the filing period began on August 15, 2016 (the date of OPM's reconsideration decision), and that the appellant did not file her appeal until September 23, 2016, so the appeal appeared to have been filed 9 days late. IAF, Tab 3 at 2. Accordingly, the administrative judge ordered the appellant to file evidence and/or argument demonstrating that her appeal was timely filed or that good cause existed for her delay in filing. *Id.* at 3.

¶4     In response to the timeliness order, the appellant explained that she had been traveling from August 9 through August 23, 2016, and that the day after her return, on August 24, 2016, her husband visited their mailbox at Mail-N-Copy—a private mail service company the appellant used as her mailing address of record—and first retrieved OPM's reconsideration decision. IAF, Tab 6 at 4-5. She also provided a copy of a restaurant receipt as proof of her departure date and an airline confirmation document showing her return date.[4] *Id.* at 4, 33-38. She argued that, because she did not know that OPM sent its reconsideration decision to her while she was away from home and she did not receive the decision until August 24, 2016, her appeal dated September 23, 2016, was timely filed within 30 calendar days of her receipt of the decision. *Id.* at 5.

¶5     In its response, OPM argued that the appeal should be dismissed as untimely filed by 4 days. IAF, Tab 9 at 4. In support of its argument, OPM submitted United States Postal Service (USPS) tracking information reflecting that the reconsideration decision was delivered on August 19, 2016, at 11:57 a.m.[5]

---

[4] The appellant provided a receipt from a restaurant approximately 300 miles from her home as evidence that she commenced her trip on August 9, 2016, and an airline confirmation document showing that she flew from San Diego, California, to Denver, Colorado, arriving at 10:59 p.m. on August 22, 2016. IAF, Tab 6 at 4, 33-38. She explained in her narrative that, upon arriving in Denver, she took a regional shuttle, arriving at her home in Fort Collins, Colorado, at around 2:00 a.m. on August 23, 2016. *Id.* at 4.

[5] OPM also submitted a USPS Certified Mail Receipt, but the writing on the document is illegible. IAF, Tab 9 at 12.

*Id.* at 6.  In a reply to OPM's response, the appellant conceded that the reconsideration decision may have been placed in her mailbox at Mail-N-Copy on August 19, 2016, but argued that she should not be deemed to have received it until her husband retrieved it from the Mail-N-Copy box on August 24, 2016. IAF, Tab 10 at 4-5.

¶6      Without holding the appellant's requested hearing, the administrative judge issued an initial decision dismissing the appeal.  IAF, Tab 12, Initial Decision (ID) at 1, 5.  He determined that there was no dispute that the appellant's address of record was her mailbox at Mail-N-Copy, and that although the appellant may not have personally received the reconsideration decision until August 24, 2016, she was "deemed" to have received it when it was placed in her mailbox on August 19, 2016.  ID at 2-4.  Finding that the appellant had not offered any excuse for the filing delay other than arguing that her appeal was not, in fact, untimely, the administrative judge dismissed the appeal as untimely filed without good cause shown for the delay.  ID at 4-5.

¶7      The appellant has filed a petition for review arguing that the administrative judge misapplied the Board's regulations and improperly relied on *Marcantel v. Department of Energy*, 121 M.S.P.R. 330 (2014), in reaching his decision. Petition for Review (PFR) File, Tab 1 at 4-9.  She further argues that OPM's delay in responding to her October 11, 2013 reconsideration request was unreasonably long, and that she could not have anticipated that OPM would issue its decision nearly 3 years after her reconsideration request during a brief 14-day period while she was traveling out of state.  *Id.* at 9.  OPM has filed a response and the appellant has replied to the response.  PFR File, Tabs 4-5.

**ANALYSIS**

The Board appeal was timely filed on September 23, 2016.

¶8      An appeal from an agency's action must be filed no later than 30 days after the effective date of the action being appealed, or "30 days after the date of the

appellant's receipt of the agency's decision, whichever is later." 5 C.F.R. § 1201.22(b)(1). Regarding the appellant's receipt of an agency's decision, the Board's regulations provide that there is a rebuttable presumption that correspondence that is properly addressed and sent to the appellant's address of record via postal or a commercial delivery service is presumed to have been duly delivered. 5 C.F.R. § 1201.22(b)(3). While the regulation provides that there is a rebuttable presumption of delivery, it further provides that the presumption "may be overcome under the circumstances of a particular case." 5 C.F.R. § 1201.22(b)(3). However, service may not be avoided by the appellant's intentional or negligent conduct. *Id.*

¶9    The regulation also provides that an appellant may be "deemed" to have received an agency's decision if it was received by a designated representative or a person of suitable age and discretion residing with the appellant. *Id.* The Board has held that when a statute or a regulation "deems" something to have been done, the event is considered to have occurred whether or not it actually did. *Maurer v. Office of Personnel Management*, 84 M.S.P.R. 156, ¶ 12 (1999), *aff'd*, 236 F.3d 1352 (Fed. Cir. 2001). The regulation provides three examples of situations in which an appellant may or may not be deemed to have received an agency's decision.[6] *Id.* The use of language such as an appellant "*may . . . be deemed to have received*" an agency's decision and an appellant "*may*" overcome the presumption of receipt, *make clear that the Board has the discretion to determine if the presumption of delivery should apply in a given case, and thus,*

---

[6] In the Federal Register Notice promulgating the 2012 changes to 5 C.F.R. § 1201.22(b)(3), one commenter objected to the use of the examples in the regulations because they might be read as determinative. 77 Fed. Reg. 62,350, 62,352 (Oct. 12, 2012) (codified at 5 C.F.R. parts 1200, 1201, 1203, 1208, and 1209). In response, the Board explained that the examples were offered only as a means to explain the rule to pro se litigants and emphasized that the cited circumstances "may" establish the contested issue. *Id.*

*whether the appellant should be deemed to have received the decision on a particular date.*

¶10 Turning to the instant appeal, we agree with the administrative judge that OPM's reconsideration decision was properly sent to the appellant's address of record at her mailbox at the Mail-N-Copy, and that it was received at that location on August 19, 2016, thereby creating a rebuttable presumption that the appellant received the reconsideration decision on that date. ID at 2-3. We nevertheless conclude, based on the circumstances of this case, that the appellant has rebutted the presumption of receipt on August 19, 2016, by providing evidence that she did not physically receive the reconsideration decision until 5 days later when her husband retrieved it from the Mail-N-Copy mailbox on August 24, 2022.

¶11 Although the administrative judge analogized the appellant's situation to that in *Marcantel v. Department of Energy*, the circumstances of that case are factually distinguishable from the circumstances here. ID at 3-4. In *Marcantel*, the Board cited Example A of 5 C.F.R. § 1201.22(b)(3), which provides that "[a]n appellant who fails to pick up mail delivered to his or her post office box may be deemed to have received the agency decision." 121 M.S.P.R. 330, ¶ 9. Mr. Marcantel was deemed to have received the agency's removal decision when the decision was sent to his address of record, which was also his father's home, while he was working on an off-shore oil rig, and his father signed the certified mail receipt and received the document on his behalf. *Marcantel*, 121 M.S.P.R. 330, ¶¶ 2, 6-7, 9. Mr. Marcantel did not personally receive the removal decision until he had been back from the oil rig for 9 days, which was 12 days after his father accepted delivery on his behalf. The Board found his appeal, filed 14 days after the 30-day filing period, was untimely filed without good cause for the delay. *Id.*, ¶¶ 7-12. In declining to find that Mr. Marcantel rebutted the presumption of constructive receipt as of the date his father signed for the agency decision, the Board emphasized the language in section 1201.22(b)(3), stating that an appellant may not avoid service of a properly addressed and mailed

decision through intentional or negligent conduct that frustrates actual service. *Marcantel*, 121 M.S.P.R. 330, ¶ 9.

¶12    Unlike the circumstances in *Marcantel* in which Mr. Marcantel's father signed the certified mail receipt and physically received the decision on his son's behalf at his son's address of record, there is no indication that an employee of Mail-N-Copy signed for and received OPM's reconsideration decision on the appellant's behalf, and the appellant asserts that no employee of Mail-N-Copy resides with her.  IAF, Tab 9 at 12; PFR File, Tab 1 at 8; *see Marcantel*, 121 M.S.P.R. 330, ¶¶ 2-3, 7.  Additionally, the appellant's husband expeditiously retrieved OPM's decision from their mailbox the day after their return from the out-of-state trip.  IAF, Tab 6 at 4-5.  Thus, there is no indication that the appellant engaged in any intentional or negligent conduct that was designed to frustrate actual service.  *See* 5 C.F.R. §1201.22(b)(3).  This supports the finding that the appellant rebutted the presumption of receipt as of the date the reconsideration decision was placed in her mailbox.

¶13    Following the issuance of the initial decision in this appeal and the filing of most of the pleadings on petition for review, the Board issued its decision in *Little v. U.S. Postal Service*, 124 M.S.P.R. 183 (2017).  Like *Marcantel*, *Little* is also distinguishable from the instant appeal.  In *Little*, the appellant checked his post office box on January 12, 2016—the day before the final agency decision (FAD) on his formal equal employment opportunity complaint was placed in the post office box.[7]  *Little*, 124 M.S.P.R. 183, ¶¶ 2-3, 9.  He did not check his post office box again until 4 days later, on January 16, 2016—3 days after the FAD had been placed in his post office box.  *Id.*, ¶ 9.  Mr. Little subsequently filed his Board appeal on February 13, 2016, and contended that the filing period should

---

[7] *Little* involved the timeliness of a Board appeal challenging a final agency decision regarding discrimination filed pursuant to 5 C.F.R. § 1201.154.  *Little*, 124 M.S.P.R. 183, ¶ 8.  However, the date an appellant is deemed to have received the final agency decision is determined as set forth in 5 C.F.R. § 1201.22(b)(3), so *Little* is instructive here.  5 C.F.R. § 1201.154.

have been calculated based on January 16, 2016, the date that he physically retrieved the decision from his post office box. *Id.*, ¶¶ 5, 9. In its decision, the Board again relied on Example A from 5 C.F.R. § 1201.22(b)(3) to conclude that the appellant was deemed to have constructively received the agency's decision when it was placed in his post office box. *Little*, 124 M.S.P.R. 183, ¶¶ 8-9.

¶14 In contrast, the appellant in this case did not return home from her trip until more than 4 days after the agency decision had been placed in her mailbox. IAF, Tab 10 at 4-5, 37-38; *see* IAF, Tab 9 at 6. Her husband checked the mailbox on her behalf the day after their return, and she calculated her filing timeline based on that date. IAF, Tab 10 at 4-5. Unlike the appellant, who was out of her state of residence at the time the agency decision was delivered, and who checked her mailbox at the first available opportunity, Mr. Little had the opportunity to retrieve the agency's decision from his P.O. box at any time after it was placed in his mailbox on January 13, 2016, and so his delay in receiving the agency decision was the consequence of his own conduct, driven by considerations of personal convenience. *See* 5 C.F.R. § 1201.22(b)(3) (stating that an appellant "may not avoid service of a properly addressed and mailed decision by intentional or negligent conduct which frustrates actual service").

¶15 Additionally, in *Little* the Board observed that the appellant was under a "heightened obligation" to monitor his incoming mail, given that an Equal Employment Opportunity Commission administrative judge had recently remanded his case to the agency for issuance of a FAD. *Little*, 124 M.S.P.R. 183, ¶ 3 n.1, ¶ 9 n.2. In this case, however, the appellant had waited nearly 3 years for OPM to issue a reconsideration decision and thus she would have had little reason to expect it during a brief 14-day window when she was out of state and unable to retrieve her mail. The last correspondence she had received from OPM was a June 29, 2016 request for an updated Financial Resources Questionnaire, which made no mention that issuance of a reconsideration decision was imminent,

provided that the appellant timely responded with the requested information, which OPM has not argued that she failed to do.  IAF, Tab 9 at 21.

¶16   Accordingly, based on the facts of this case, we find that the appellant successfully rebutted the presumption that she received OPM's reconsideration decision on August 19, 2016, and instead established that she did not actually receive the decision until August 24, 2016.  Therefore, that is the date that controls for determining the timeliness of her Board appeal.  Consequently, we conclude that her Board appeal, filed 30 days later on September 23, 2016, was timely, and the administrative judge erred by dismissing the appeal as untimely filed.

Alternatively, the appellant established good cause for the delay in filing her appeal.

¶17   Even if the appeal was untimely filed based on the date OPM's reconsideration decision was placed in the appellant's mailbox, August 19, 2016, the appellant nevertheless established good cause for her untimely filing.[8]  In order to establish good cause for the untimely filing of an appeal, a party must show that she exercised due diligence or ordinary prudence under the particular circumstances of the case.  *Marcantel*, 121 M.S.P.R. 330, ¶ 10; *Alonzo v. Department of the Air Force*, 4 M.S.P.R. 180, 184 (1980).  In making a good cause determination, the Board considers the length of the delay, the reasonableness of the appellant's excuse and her showing of due diligence, whether she is proceeding pro se, and whether she has presented evidence of the existence of circumstances beyond her control that affected her ability to comply with the time limits or of unavoidable casualty or misfortune which similarly

---

[8] Because there is no factual dispute regarding the date the appellant received OPM's reconsideration decision and the record is complete on the issue of timeliness, we discern no need to remand the appeal for a timeliness hearing.  *Cf. Boyd v. Department of Veterans Affairs*, 111 M.S.P.R. 116, ¶ 8 (2009) (observing that, when an appellant requested a hearing and there are factual disputes on the issue of timeliness, the appellant is ordinarily entitled to a timeliness hearing).

shows a causal relationship to his inability to timely file her appeal. *Moorman v. Department of the Army*, 68 M.S.P.R. 60, 62-63 (1995), *aff'd* 79 F.3d 1167 (Fed. Cir. 1996) (Table); *see Little*, 124 M.S.P.R. 183, ¶ 10.

¶18     Even if the appellant were deemed to have received the decision as of the date it was placed in her mailbox on August 19, 2016, the appellant's 5-day filing delay is not particularly lengthy. *See White v. Department of Justice*, 103 M.S.P.R. 312, ¶ 10 (2006) (noting that a 5-day delay is "not particularly lengthy"), *aff'd,* 230 F. App'x 976 (Fed. Cir. 2007); *Brown v. Office of Personnel Management*, 86 M.S.P.R. 417, ¶ 8 (2000) (finding the appellant's 5-day refiling delay to be "relatively de minimis").   Additionally, the appellant provided a reasonable excuse for her filing delay, i.e., that she interpreted the filing deadline set forth in OPM's reconsideration decision according to its literal requirements and calculated the filing period based on the date that she physically received the reconsideration decision.   IAF, Tab 1 at 11, Tab 6 at 5.   Further, as described above, the delay was due to circumstances beyond the appellant's control, namely, she was unable to access her mail box for several days because she was traveling out of state.   Given the particular circumstances of this case, we find good cause for the appellant's filing delay.

## ORDER

¶19     Accordingly, we remand the appeal to the Denver Field Office for further adjudication consistent with this Remand Order, including the hearing the appellant requested.


FOR THE BOARD:                                    /s/ for
                                    _____
                                    Jennifer Everling
                                    Acting Clerk of the Board
Washington, D.C.