# United States Court of Appeals for the Federal Circuit

---

**DANIEL A. GROVER,**
*Petitioner*

v.

**OFFICE OF PERSONNEL MANAGEMENT,**
*Respondent*

---

2015-3160

---

Petition for review of the Merit Systems Protection Board in No. CH-0831-13-2586-B-1.

---

Decided: July 15, 2016

---

NORMAN JACKMAN, Jackman & Roth, LLP, Cambridge, MA, argued for petitioner.

ANTHONY F. SCHIAVETTI, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent. Also represented by BENJAMIN C. MIZER, ROBERT E. KIRSCHMAN, JR., REGINALD T. BLADES, JR.

---

Before TARANTO, CLEVENGER, and CHEN, *Circuit Judges.*

TARANTO, *Circuit Judge.*

Daniel Grover applied for a retirement annuity under the Civil Service Retirement System after he retired as a customs officer. By statute, the annuity must reflect the highest average annual pay based on three consecutive years of specified service, and for a customs officer like Mr. Grover in the years in question, the calculation must include overtime pay up to $17,500. The Office of Personnel Management, in calculating Mr. Grover's pay for the years in question, did not include anything close to $17,500 in overtime pay, although Mr. Grover asserted that he received more than $17,500 in overtime pay in those years. The Merit Systems Protection Board rejected Mr. Grover's challenge to OPM's calculation.

OPM relied on a particular official record for its calculation. But neither OPM nor the Board recognized that the record is internally contradictory about what overtime pay Mr. Grover received. Accordingly, neither OPM nor the Board sought further information—such as pay stubs—that might definitively resolve the uncertainty and determine what overtime pay Mr. Grover actually received. Moreover, the Board and OPM relied on a legal ground that seems to make the factual issue immaterial even in the face of internally conflicting information in the official record used by OPM for its calculation.

That ground, as OPM now agrees, is incorrect, and the key official record, OPM also now agrees, is in fact internally inconsistent. Although OPM points to a regulation as independently supporting the result challenged in this appeal, by authorizing it to rely on the official record it used, that regulation does not address what to do when the record is internally contradictory. In this case, moreover, we have been shown no reason why objective documentation (pay stubs) should not be available to resolve the issue (the amount of overtime pay) definitively. At least in this circumstance, the regulation does not permit the Board to affirm OPM's calculation without resolving the amount-of-overtime-pay factual issue. We

vacate the Board's decision and remand for a determination of that issue.

## BACKGROUND

Mr. Grover worked for many years as an officer within the Customs and Border Protection service, now located within the Department of Homeland Security. During his tenure, he participated in the Civil Service Retirement System (CSRS), which is defined in subchapter III of chapter 83 (within Part III, subpart G) of Title 5, U.S. Code. *See* 5 U.S.C. §§ 8331–8351. He retired in August 2008.

Mr. Grover applied to OPM for a retirement annuity. The statute provides that OPM "shall administer [the CSRS] subchapter." 5 U.S.C. § 8347(a). It directs OPM to "perform, or cause to be performed, such acts and prescribe such regulations as are necessary and proper to carry out this subchapter." *Id.* As OPM stated in its April 3, 2014 letter to Mr. Grover (April 2014 Letter), "OPM is charged with the administration of the Civil Service Retirement law and is expected to pay benefits as provided by law." J.A. 32.

Under 5 U.S.C. § 8339(a), Mr. Grover is entitled to an annuity based on his length of service and on his "average pay." The statute defines "average pay" as "the largest annual rate resulting from averaging an employee's . . . rates of basic pay in effect over any 3 consecutive years of creditable service." 5 U.S.C. § 8331(4). That amount has been referred to as the "high-three" average.

Critically for purposes of the dispute in this case, for a customs officer like Mr. Grover, the "basic pay" used for calculating the "average pay" includes overtime pay up to a prescribed amount. Specifically, 5 U.S.C. § 8331(3)(G) requires inclusion in "basic pay" of certain authorized "compensation for overtime inspectional services" (overtime pay), "not to exceed 50 percent of any statutory

maximum in overtime pay for customs officers which is in effect for the year involved." Mr. Grover was covered by the Customs Officer Pay Reform Act of 1993 (COPRA), a part of the Omnibus Budget Reconciliation Act of 1993, Pub. L. No. 103-66, §§ 13811–13812, 107 Stat. 312, 668–71, which provided for overtime pay for customs officers like Mr. Grover up to a specified cap. *See* 19 U.S.C. § 267. For the years in question, that cap was $35,000. J.A. 5 n.5 (citing Department of Homeland Security Appropriations Bill, 2005, Pub. L. No. 108-334, 118 Stat. 1298 (2004)). Accordingly, Mr. Grover was entitled to have up to $17,500 in overtime pay included in the calculation of the high-three average pay—if he received that much.

When Mr. Grover retired, OPM turned for information about his pay to the National Finance Center, which "was the servicing payroll office for Customs and Border Protection." J.A. 32 (April 2014 Letter). It did so in accord with its general practice under an OPM regulation, 5 C.F.R. § 831.103, which states:

> (a) Standard Form 2806 (Individual Retirement Record) is the basic record for action on all claims for annuity or refund, and those pertaining to deceased employees, deceased Members, or deceased annuitants.

> (b) When the records of the department or agency concerned are lost, destroyed, or incomplete, the department or agency shall request the General Accounting Office, through OPM, to furnish the data that it considers necessary for a proper determination of the rights of the claimant. When an official record cannot develop the required information, the department, agency, or OPM should request inferior or secondary evidence which is then admissible.

The National Finance Center prepared and certified Mr. Grover's Individual Retirement Record (IRR), Stand-

ard Form 2806, though—seemingly with some involvement from OPM—it had to prepare more than one version until it arrived at a final one. J.A. 3; J.A. 18 n.1; Oral Arg. at 27:00–27:20. OPM, for its part, made calculations of average pay, revised them, and revised them some more before arriving—in Mr. Grover's second Board appeal—at a final calculation of average pay. J.A. 3–4. The alterations involved details of the calculation that are not the focus of the current dispute. Also not in dispute is that the three years in question are Mr. Grover's final years on the job, from August 2005 to August 2008. OPM provided its final explanation in its April 2014 Letter, during Mr. Grover's second Board appeal. J.A. 32–59 (letter and attachments).

The dispute here is whether Mr. Grover actually received at least $17,500 in overtime pay in those years. Mr. Grover has consistently urged that he did receive such overtime pay throughout the relevant 2005–2008 period. But as is now undisputed, OPM did not include anything close to that amount of overtime pay when calculating the high-three average. The result was an OPM-calculated high-three average significantly lower than what it would be if $17,500 in overtime pay were included for each of the three years at issue.

In making its calculations, OPM relied on the final Form 2806. J.A. 49. But OPM has itself now described that Form as containing "contradict[ory]," "inconsistent," and "conflicting" information on the issue of what amount of overtime Mr. Grover earned. Dep't of Justice Letter to Federal Circuit, May 26, 2016, at 1, 3 (DOJ Letter). OPM chose to use one side of the facial informational conflict without any evident recognition there was such an internal contradiction.

Thus, one piece of information on Form 2806 (and on earlier versions, *see* J.A. 39–41) consists of Remarks in the right-hand column that strongly appear to indicate

that, for the years in question, Mr. Grover's pay did include $17,500 in overtime pay. On the other hand, other information on the same Form reported the dollar value of retirement deductions taken from pay during employment and the rates that generated those deductions. OPM used that deduction-and-rate information for its average-pay calculation. By dividing the deduction amounts by rates, OPM found the amounts to which the rates were applied, which OPM treated as the amount of pay: it converted deductions to earnings. *See* J.A. 49–58.[1] It is arithmetically clear, and OPM now agrees, that relying on the deduction information in that way produces pay amounts that include nothing close to $17,500 in overtime pay for the full period at issue. *See* Oral Arg. at 30:50–31:15.

In choosing to rely on the deduction information of Form 2806 and not use the Remarks information, OPM followed a general practice reflected in a sentence of OPM's *CSRS and FERS Handbook for Personnel and Payroll Offices* at Chapter 81, Section 81A2.2-2, Paragraph E (April 1998): "OPM computes Customs Service cases using deductions to determine the average salary." In this case, OPM in its April 2014 Letter did not state that the Remarks in Mr. Grover's Form 2806 were inaccurate, or otherwise explain them, and it did not even

---

[1] To simplify: If D is the dollar amount of the deduction in a year, and R is the rate, then D/R is the amount of pay (P) from which the deduction was taken (R x P = D). The actual calculations include a few complications. For example, different portions of pay were subject to different deduction rates, and separate deduction amounts and deduction rates are given on the Form—both of which must be converted to pay, with the results then added together. But those details are unimportant to the issue presented here.

recognize that there was a striking internal disparity between the Remarks and deduction information on the Form. Accordingly, it did not recognize that the disparity might be addressed by seeking more information such as the actual pay stubs.

OPM simply asserted that it was calculating earnings by using the retirement deductions reported on Form 2806 and converting them to earnings. J.A. 33. OPM said, "Only pay subject to retirement deductions can be used to compute an average salary for an annuity," *id.*, seemingly as a legal rule, applicable without inquiry into whether the deduction amounts stated on Form 2806 might be inaccurate. OPM told Mr. Grover: "We used retirement deductions for every year to compute your average salary." J.A. 34.

On that basis, OPM calculated a high-three average pay of $88,964. J.A. 35. In contrast, as early as February 4, 2011, Mr. Grover's counsel had submitted a detailed letter to OPM citing pay stubs as the basis for a detailed calculation producing a high-three average of $106,278.57.

Mr. Grover appealed to the Board, which had jurisdiction to review OPM's annuity determination under 5 U.S.C. § 8347(d)(1). The Board's assigned administrative judge affirmed OPM, and the Board affirmed the administrative judge. Neither the administrative judge nor the Board, however, recognized the (now conceded) fact that Form 2806 is internally contradictory about the amount of overtime pay included in the annual pay counted for the retirement annuity in the years in question. Neither focused on what OPM or the Board may, could, or should do in the face of such self-contradictory evidence.

The administrative judge said that the deductions reported on Form 2806 "necessarily would have included any allowable overtime pay" and added: "In fact, [Mr. Grover's] IRR states in the 'Remarks' column that *the*

*deductions include* the relevant yearly statutory maximums of $17,500 per year since 2005." J.A. 21–22 (emphasis added). But it is now beyond dispute that the $17,500 figure was *not* included in the reported deductions. And the "necessarily would have included" statement disregards the possibility of error.

The Board, for its part, recognized that Mr. Grover was "argu[ing] that, based on his pay stubs for the years 2005 through 2008, his high-three average pay should be $106,278.57." J.A. 5. But the Board made the same pair of assertions that the administrative judge made: "retirement deductions . . . would have necessarily included all allowable overtime pay," and Form 2806 "states that overtime pay up to the statutory maximums was included in [Mr. Grover's] retirement deductions." J.A. 6. The Board then repeated OPM's legal ground suggesting that the deductions taken are dispositive of the high-three average pay calculation even if the amount of the deductions taken was mistaken: "only pay subject to retirement deductions may be used to compute average pay for retirement purposes." J.A. 6 n.7.

Mr. Grover appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(9).

## DISCUSSION

We review the Board's decision to determine whether it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c); *see Terban v. Dep't of Energy*, 216 F.3d 1021, 1024 (Fed. Cir. 2000). Applying those standards, we must vacate the Board's decision.

The Board's decision, following OPM's April 2014 Letter, strongly appears to rely on an incorrect legal ground. The Board asserted that "only pay subject to retirement

deductions may be used to compute average pay for retirement purposes," J.A. 6 n.7, just as OPM had stated that "[o]nly pay subject to retirement deductions can be used to compute an average salary for an annuity," J.A. 33. The Board, like OPM, relied on that assertion as a basis for using the Form 2806 deductions (converted to earnings) without any inquiry into their accuracy, even into their consistency with other information on Form 2806. We therefore read the Board's statement, and OPM's, as a legal proposition that average-pay calculation *must* be based on information about the deductions reported on Form 2806 as having been taken. That proposition is incorrect, as OPM now recognizes. *See* DOJ Letter at 3.

At most, OPM has a "long-standing, OPM-wide practice," reflected in the *Handbook*. DOJ Letter at 2. That "practice" does not and cannot override the clear statutory annuity standard, which provides no room for "excluding from the calculation of average salary for retirement annuity purposes any pay, including overtime pay under COPRA, that is actually received and is properly part of the average salary computation." *Id.* The deduction-converted-to-earnings method used by OPM will generally produce the statutorily required calculation "[p]rovided that the employing agency deducts the correct retirement contributions as required by law and properly certifies the amount of those deductions to OPM." *Id.* at 3. But in this court OPM now correctly declines to defend the idea, reflected in its April 2014 Letter and in the Board's opinion, that the reported-deduction method is automatically legally correct, even when those assumptions do not hold true. *See* Oral Arg. at 15:33–16:32, 23:20–23:40, 26:20–26:30, 28:00–28:20.

The Board's decision is also unsupported by substantial evidence—evidence that a reasonable mind may take as sufficient to establish a conclusion. *See Dickinson v. Zurko*, 527 U.S. 150, 162 (1999); *Consolo v. Fed. Mar.*

*Comm'n*, 383 U.S. 607, 620 (1966). The Board (like the administrative judge) read Form 2806 as establishing that $17,500 was in fact included in the amounts from which deductions had been taken. But OPM now recognizes that the numbers on Form 2806 indicate the opposite. Indeed, OPM now states in plain terms that the information on Form 2806 is contradictory, inconsistent, and conflicting. The Board, like OPM until recently, failed to so recognize. Its contrary premise is conceded by OPM to be incorrect.

We have no basis for saying that the errors made by the Board, following OPM's earlier presentations, were harmless. They led the Board, like OPM, to see no need for further inquiry into the amount of Mr. Grover's overtime pay. And this is hardly the kind of case in which there is no reason to think that further inquiry is likely to have been fruitless or unenlightening. Here, it is reasonable to expect that pay stubs could be retrieved that would objectively resolve the factual issue.

OPM makes one argument for nevertheless affirming. It points to the regulation we have quoted above, 5 C.F.R. § 831.103, and notes that, in several non-precedential decisions, this court has deferred to OPM's interpretation of the regulation as requiring OPM to follow an Individual Retirement Record (Form 2806), rather than question its accuracy. *See Thomas v. Office of Pers. Mgmt.*, 350 F. App'x 448, 451 (Fed. Cir. 2009); *Lee v. Office of Pers. Mgmt.*, 301 F. App'x 926, 928 (Fed. Cir. 2008); *Rainone v. Office of Pers. Mgmt.*, 249 F. App'x 823, 825 (Fed. Cir. 2007); *see also O'Connell v. Office of Pers. Mgmt.*, 103 M.S.P.R. 579, 580–81 (2006). We have no occasion here to question OPM's general view of the regulation. But neither the regulation nor any of our non-precedential decisions tells OPM what to do when the Form 2806 is internally contradictory on the matter in dispute. In such a situation, "follow the Form" is not an answer-producing directive. Further inquiry is required.

The case must be remanded to the Board. We do not know whether the record before the Board already contains the pay stubs that promise to be dispositive. At oral argument before this court, Mr. Grover's counsel—reading from a paper he was holding that he said was such a pay stub—stated that he believed the pay stubs were in the record. Oral Arg. at 11:20–13:40. Regardless, as OPM noted at oral argument before us, the record in the Board was not developed with a focus on the apparent need for pay stubs as clarification. Oral Arg. at 28:20–28:40. At this stage, more than eight years after Mr. Grover retired, we have been offered no reason why such pay stubs, if authentic, should not, if necessary, be added to the record to resolve this matter. Indeed, now that the focus has been placed on the factual question, perhaps the answer will prove sufficiently clear that the parties can quickly agree, and no further adversarial proceedings will be needed.

## CONCLUSION

The decision of the Board is vacated and the matter remanded for further proceedings.

Costs awarded to Mr. Grover.

**VACATED AND REMANDED**