NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**DANIEL A. GROVER,**
*Petitioner*

**v.**

**OFFICE OF PERSONNEL MANAGEMENT,**
*Respondent*

---

2018-2102

---

Petition for review of the Merit Systems Protection Board in No. CH-0831-13-2586-M-1.

---

Decided: April 24, 2019

---

NORMAN JACKMAN, Jackman & Roth, LLP, Lincoln, NH, argued for petitioner.

ANTHONY F. SCHIAVETTI, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent. Also represented by JOSEPH H. HUNT, REGINALD THOMAS BLADES, JR., ROBERT EDWARD KIRSCHMAN, JR.

---

Before TARANTO, SCHALL, and CHEN, *Circuit Judges.*

SCHALL, *Circuit Judge*.

## DECISION

Daniel A. Grover is a former customs officer with the Department of Homeland Security, Customs and Border Protection. He petitions for review of the initial decision of the Chief Administrative Judge ("AJ") of the Merit Systems Protection Board ("MSPB" or "Board") in *Grover v. Office of Personnel Management*, No. CH-0831-13-2586-M-1, 2018 WL 2018309 (M.S.P.B. Apr. 26, 2018) ("*Grover II*"). J.A. 1. The AJ's initial decision became the final decision of the Board on May 31, 2018. In its final decision, the Board determined that Mr. Grover had failed to establish that the calculation of his retirement annuity by the Office of Personnel Management ("OPM") was erroneous. *Grover II* followed our decision vacating a prior decision of the Board and remanding the case to the Board for further proceedings. *See Grover v. Office of Pers. Mgmt.*, 828 F.3d 1378 (Fed. Cir. 2016) ("*Grover I*"). We *affirm*.

## DISCUSSION

### I.

Pursuant to 5 U.S.C. § 8339(a), a retired federal employee, such as Mr. Grover, is entitled to an annuity based upon his length of service and his "average pay." The statute defines "average pay" as "the largest annual rate resulting from averaging an employee's . . . rates of basic pay in effect over any 3 consecutive years of creditable service." 5 U.S.C. § 8331(4). The resulting figure is commonly referred to as the "high-three average." *Grover I*, 828 F.3d at 1380. At issue in this case is the calculation of the "basic pay" that, in turn, was used to calculate Mr. Grover's "average pay." As *Grover I* explains, 5 U.S.C. § 8331(3)(G) requires the inclusion in "basic pay" of certain authorized "compensation for overtime inspectional services" (overtime pay), "not to exceed 50 percent of any statutory maximum in overtime pay for customs officers which is in effect

for the year involved." *Id.* At the time of his employment, Mr. Grover was covered by the Customs Officer Pay Reform Act of 1993 ("COPRA"). COPRA was enacted as part of the Omnibus Budget Reconciliation Act of 1993, Pub. L. No. 103-66, §§ 13811–13812, 107 Stat. 312, 668–71, which provided for overtime pay for customs officers like Mr. Grover up to a specified cap. *See* 19 U.S.C. § 267. For the years in question, the cap was $35,000. Thus, if he actually received it, Mr. Grover was entitled to have up to $17,500 in overtime pay included in the calculation of the basic pay for each of the years used in the calculation of his high-three average pay.

The issue in *Grover I* was whether, during the three-year period from August of 2005 to August of 2008, Mr. Grover received $17,500 in overtime pay in one or more of the years at issue. Mr. Grover argued that he did. In calculating his high-three average, however, OPM did not include "anything close to that amount of overtime pay." *Grover I*, 828 F.3d at 1381. As a result, OPM calculated a high-three average significantly lower than what the high-three average would have been if $17,500 in overtime pay had been included in each of the three years at issue. *Id.* In vacating the decision of the Board that had affirmed OPM's high-three calculation, *Grover I* held that further factual inquiry was required because the information on Mr. Grover's Individual Retirement Record was unclear and contained potentially internally contradictory information on the amount of creditable overtime pay that Mr. Grover received during the years in question. *Id.* at 1383–84. "[I]t is reasonable to expect," we observed, "that pay stubs could be retrieved that would objectively resolve the factual issue." *Id.* at 1383. We therefore remanded the case to the Board for further proceedings.

On remand, the AJ recognized that the only issue before her was the actual amount of overtime pay received by Mr. Grover during the 2005–2008 period. *Grover II*, J.A. 5. The AJ found that pay statements—considered pay stubs

by the AJ—provided by OPM established that Mr. Grover received $5,359.44 in overtime pay in 2005; $9,101.96 in overtime pay in 2006; $3,799.96 in overtime pay in 2007; and $3,712.51 in overtime pay in 2008. *Id.* at 7. The AJ stated that "despite the Appellant's long-standing claims, he did not reach the $17,500 statutory cap in any of the years at issue, thereby explaining why OPM did not include the full amount in its determination of the Appellant's high-three average salary." *Id.* Accordingly, the AJ affirmed OPM's decision relating to Mr. Grover's retirement annuity. This appeal followed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

## II.

Our scope of review in an appeal from a decision of the Board is limited. Specifically, we must affirm the Board's decision unless we find it to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedures required by law, rule, or regulation having been followed; or unsupported by substantial evidence. 5 U.S.C. § 7703(c); *Miller v. Fed. Deposit Ins. Corp.*, 818 F.3d 1361, 1365 (Fed. Cir. 2016).

## III.

In calculating Mr. Grover's average pay for purposes of determining his retirement annuity, OPM included overtime pay in his basic pay, but it did not include premium pay differential (work on holidays, on Sundays, and at night) ("premium pay") or relocation allowances. *Grover II*, J.A. 7–8. The AJ concluded that those exclusions were consistent with governing regulations. *Id.* at 8; *see* 19 C.F.R. § 24.16(b)(14) (explicitly excluding premium pay differential from retirement benefits calculations); 5 C.F.R. § 575.209(d) (stating that a relocation incentive is not part of an employee's rate of basic pay for any purpose). Accordingly, the AJ affirmed OPM's decision relating to Mr. Grover's retirement annuity.

On appeal, Mr. Grover does not challenge the AJ's determination as to the amount of overtime pay he received during the 2005–2008 period. Neither does he challenge OPM's calculation of his retirement annuity based upon that amount of overtime pay. Instead, he argues that the AJ erred in affirming OPM's exclusion of premium pay and relocation allowances from basic pay in the calculation of his annuity. In making this argument, he contends that the two regulations upon which OPM relied, 19 C.F.R. § 24.16(b)(14) and 5 C.F.R. § 575.209(d), are unlawful because they were adopted by OPM contrary to statutory authority. Pet'r's Br. 11–14. We do not agree.

Under 5 U.S.C. § 8331(3)(C), premium pay is included in basic pay if it is paid under 5 U.S.C. § 5545(c)(1). Premium pay under § 5545(c)(1) is paid to an employee required to remain at a work station "during longer than ordinary periods of duty, a substantial part of which consists of remaining in a standby status rather than performing work." Mr. Grover does not argue that the premium pay that he received was of this nature. Pet'r's Br. 11–12. What he does argue is that he was entitled to have premium pay included in his basic pay under 5 U.S.C. § 8331(3)(D). Section 8331(3)(D) provides that basic pay includes, "with respect to a law enforcement officer, premium pay under [5 U.S.C. § 5545(c)(2)]." The problem with this argument is that nothing in the record supports the proposition that Mr. Grover was a "law enforcement officer." *See* 5 U.S.C. § 8331(20), (31). Rather, the premium pay that Mr. Grover received was that paid to customs officers under COPRA. Significantly, the statute that provides for overtime and premium pay for customs officers states that "[p]remium pay provided for under this subsection may not be treated as overtime pay or compensation for *any* purpose." 19 U.S.C. § 267(b)(4) (emphasis added). The regulation upon which OPM relied in this matter, 19 C.F.R. § 24.16(b)(14), is consistent with the statute. *See id.*

("Premium pay is not includable for Federal retirement benefit purposes.").

As noted above, pursuant to 5 C.F.R. § 575.209(d), OPM also excluded relocation allowances from basic pay when it calculated Mr. Grover's average pay. The statute upon which Mr. Grover relies on this point, 5 U.S.C. § 5724, provides authority for the payment of relocation expenses. It does not, however, provide for the inclusion of such allowances in basic pay for purposes of calculating an employee's retirement annuity. Under these circumstances, we see no inconsistency between the regulation and the statute.

Finally, we have considered Mr. Grover's remaining arguments, including the argument that OPM improperly relied on 5 C.F.R. § 844.102 when it calculated his retirement annuity. We find them to be without merit.

## CONCLUSION

For the foregoing reasons, the decision of the Board in *Grover II* is *affirmed*.

**AFFIRMED**

### COSTS

Each party shall bear its own costs.