NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**MICHELLE DILLARD,**
*Petitioner*

**v.**

**OFFICE OF PERSONNEL MANAGEMENT,**
*Respondent*

_____

2019-2123

_____

Petition for review of the Merit Systems Protection Board in No. AT-831M-19-0266-I-1.

_____

Decided: December 5, 2019

_____

MICHELLE DILLARD, Peachtree City, GA, pro se.

ALBERT S. IAROSSI, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by JOSEPH H. HUNT, LISA LEFANTE DONAHUE, ROBERT EDWARD KIRSCHMAN, JR.

_____

Before WALLACH, CLEVENGER, and STOLL, *Circuit Judges.*

PER CURIAM.

Petitioner Michelle Dillard seeks review of a final decision of the Merit Systems Protection Board ("MSBP"), which affirmed the Office of Personnel Management's ("OPM") determination that she had "received an overpayment of $10,434.62" from her Civil Service Retirement System ("CSRS") retirement annuity. *See Dillard v. Office of Pers. Mgmt.*, No. AT-831M-19-0266-I-1, 2019 WL 2176482 (M.S.P.B. May 13, 2019) (R.A. 4–11); R.A. 4.[1] We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9) (2012). We affirm.

BACKGROUND[2]

Ms. Dillard was employed by the federal government for nearly twenty years. *See* R.A. 5; *see also* R.A. 40–41. In August 1998, Ms. Dillard "indicated her intent to resign under a Voluntary Separation Incentive Program" and "requested the amount of her [CSRS] retirement contributions from [the] OPM." R.A. 5; *see* R.A. 47 (August 1998 Letter

---

[1]    An administrative judge issued the initial decision on May 13, 2019, which became final on June 17, 2019, because Ms. Dillard did not file a petition for review. *See* R.A. 11; *see also* 5 C.F.R. § 1201.113 (2018) (providing "[t]he initial decision of the judge will become the [MSPB]'s final decision [thirty-five] days after issuance" unless, inter alia, "(a) . . . any party files a petition for review"). Therefore, we refer to the Initial Decision as the MSPB's Final Decision. "R.A." refers to the appendix attached to the Respondent's Brief.

[2]    Because the parties do not dispute the MSPB's recitation of the facts, we cite to the MSPB's decision for the relevant background facts. *See* R.A. 4; *see generally* Pet'r's Br.; Resp't's Br.

from Ms. Dillard to OPM).[3]  Ms. Dillard completed her employment in January 1999.  R.A. 5.

In March 1999, Ms. Dillard applied for a refund of her retirement deductions and asked for it to be mailed to her address of record in Georgia.  R.A. 5.  In April 1999, Ms. Dillard's husband signed a form acknowledging Ms. Dillard's application, indicating that he "underst[oo]d that [his] spouse [was] applying for a refund of Civil Service Retirement Deductions," and the form was witnessed by an attorney who worked for Ms. Dillard's husband's employer.  R.A. 5; *see* R.A. 42−43 (Current/Former Spouse's Notification of Application for Refund of Retirement Deductions Under the Civil Service Retirement System) (providing notice to Ms. Dillard's husband of Ms. Dillard's Application, dated April 1999, signed by Ms. Dillard and her spouse, and witnessed by an Attorney Advisor at her spouse's place of employment).  Later that month, the Department of Treasury issued Ms. Dillard a $30,630.97 retirement deduction refund check.  R.A. 5; *see* R.A. 37 (OPM Refund Archive Data), 59 (OPM Master Record Printout), 60 (Address of Record).

In May 2006, Ms. Dillard began working for the U.S. Department of the Army.  R.A. 5.  In June 2016, Ms. Dillard again applied for immediate retirement from

---

[3]    CSRS was replaced by the Federal Employees' Retirement System ("FERS") Act of 1986.  *See* Pub. L. No. 99-335, 100 Stat. 514 (codified at 5 U.S.C. §§ 8343a, 8349, 8350–8351, 8401–8479).  "FERS was designed to improve upon CSRS, with the disability section in particular having minimal differences to CSRS."  *Springer v. Adkins*, 525 F.3d 1363, 1367 (Fed. Cir. 2008) (citing S. Rep. No. 99–166, at 21 (1985), *as reprinted in* 1986 U.S.C.C.A.N. 1405, 1426) ("To minimize differences from the CSRS, the majority of standards and procedures applicable to the [FERS] are identical to those of the CSRS.").

her federal service, "with a final separation date of September 30, 2016." R.A. 5. The OPM provided Ms. Dillard with interim annuity payments from October 2016 through June 2017. *See* R.A. 54 (Calculation of Annuity Overpayment) (providing calculation of "the amount [Ms. Dillard] [had] been overpaid in annuity benefits," based on payments made from October 2016 to June 2017). In July 2017, the OPM notified Ms. Dillard "that she had received an overpayment in the amount of $10,434.62, in part, because her interim annuity payments[4] were based on [thirty] years of Federal service, not [ten]." R.A. 5−6. Ms. Dillard requested a reconsideration of the OPM's finding of overpayment, claiming that her interim annuity payments were correctly based on thirty—and not ten—years of service because she had "never received the [1999] refund check for her retirement contributions." R.A. 6; *see* R.A. 57. The OPM affirmed its prior decision. R.A. 6; *see* R.A. 25.

---

4    The OPM generally makes interim annuity payments before it makes a former employee's first regular monthly annuity payment. 5 C.F.R. § 831.603. The interim payments are "estimated payments" made until the OPM has "adjudicated the regular rate of annuity payments." *Id.* When interim annuity payments are authorized, recipients are notified that, if the interim amount paid is more than the adjudicated amount, the OPM "will make adjustments to [the] balance [of their] account" by reducing their first regular payment, and "[i]n the rare case where the overpaid interim payment(s) exceed the amount of [the recipients'] next check," the OPM will "notif[y]" the recipients, giving them "opportunity to respond before [OPM] begin[s] to withhold the excess from future annuity payments." R.A. 29; *see* R.A. 25. Ms. Dillard does not contest that she was provided with this notice. *See generally* Pet'r's Br.

In January 2019, Ms. Dillard appealed the OPM's reconsideration decision to the MSPB, claiming "that the overpayment should not exist because she never received the [1999] refund check for her retirement deductions." R.A. 6. Ms. Dillard also claimed that she did not "remember filling out [any] paperwork" requesting a refund of her retirement contributions. R.A. 7. In May 2019, the MSPB affirmed the OPM's reconsideration decision, determining that the "OPM proved by preponderant evidence the existence and the amount of the overpayment." R.A. 11. First, in regard to the 1999 request and refund of her retirement contributions, the MSPB found that Ms. Dillard was "well-aware that she had applied for th[e] refund[,]" because Ms. Dillard "actively sought the amount of her retirement contribution refund from [the] OPM, the unequivocal notice provided by the OPM's forms," and that Ms. Dillard completed "the formalities required to execute them[.]" R.A. 8–9; *see* R.A. 47 (August 1998 Letter from Ms. Dillard to OPM); *see also* R.A. 40 (Application for Refund of Retirement Deductions), 42–43. Second, the MSPB found that "if [Ms. Dillard] truly had not received this refund, she would have contacted [the] OPM . . . to inquire about the refund's status" and "[t]hat she did not contact [the] OPM . . . is strong evidence that she did, in fact, receive the refund check." R.A. 9. Third, although Ms. Dillard testified that the "image of the negotiated check presented by [the] OPM is illegible," R.A. 7, the MSPB found that "while portions of the check image are blurry, it is not completely illegible," and it is more likely than not that "the portion of the signature on the back of the check matches [Ms. Dillard's] signature on [her] pleadings and retirement applications." R.A. 9; *see* R.A. 38–39 (providing check images with a portion of Ms. Dillard's signature). Accordingly, the MSPB affirmance of the OPM's reconsideration decision was supported by substantial evidence. R.A. 11.

## DISCUSSION

### I. Standard of Review and Legal Standard

We will uphold a decision of the MSPB unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "unsupported by substantial evidence." 5 U.S.C. § 7703(c) (2012); *see Grover v. Office of Pers. Mgmt.*, 828 F.3d 1378, 1382 (Fed. Cir. 2016) (applying § 7703(c) to review an MSPB decision). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Shapiro v. Soc. Sec. Admin.*, 800 F.3d 1332, 1336 (Fed. Cir. 2015) (internal quotation marks and citation omitted). "The petitioner bears the burden of establishing error in the MSPB's decision." *Jenkins v. Merit Sys. Prot. Bd.*, 911 F.3d 1370, 1373 (Fed. Cir. 2019) (internal quotation marks, brackets, and citations omitted). Additionally, "pro se pleadings are to be liberally construed." *Durr v. Nicholson*, 400 F.3d 1375, 1380 (Fed. Cir. 2005) (citing *Hughes v. Rowe*, 449 U.S. 5, 9−10 (1980)).

In retirement annuity cases, "[the OPM] must establish by the preponderance of the evidence that an overpayment occurred." 5 C.F.R. § 831.1407(a); *see King v. Office of Pers. Mgmt.*, 730 F.3d 1342, 1348 (Fed. Cir. 2013) ("First, [the] OPM bears the burden of proving an annuity overpayment by a preponderance of the evidence." (citation omitted)). A preponderance of the evidence is defined as "[t]he degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue." 5 C.F.R. § 1201.4(q)[5]; *see Ortiz v. Principi*, 274 F.3d

---

[5]    Because this case was not brought before the MSPB under 5 C.F.R. § 1201.57, but 5 C.F.R. § 1201.56(b)(ii),"the [OPM] [bore] the burden of proof and

1361, 1365 (Fed. Cir. 2001) (quoting *In re Winship*, 397 U.S. 358, 371−72 (1970) ("The burden of proving something by a 'preponderance of the evidence' requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence before [he or she] may find in favor of the party who has the burden to persuade the [judge] of the fact's existence.")).

## II. Substantial Evidence Supports the MSPB's Determination that the OPM Established by a Preponderance of the Evidence the Existence of Overpayment to Ms. Dillard

The MSPB affirmed the OPM's reconsideration decision finding a $10,434.62 overpayment of Ms. Dillard's interim annuity payments. R.A. 4. Specifically, the MSPB determined that the "OPM proved by preponderant evidence the existence and the amount of the overpayment." R.A. 11. Ms. Dillard's main contention is that the OPM did not meet its evidentiary burden because "[the] OPM failed to obtain the original supporting documentation, along with the check number to support the refund of $30,630.97, and a copy of [the] SF-1166 (Voucher and Schedule of Payment) to support the refund claim." Pet'r's Br. 1. We disagree with Ms. Dillard.

Substantial evidence supports the MSPB's determination that the OPM demonstrated by a preponderance of the evidence that Ms. Dillard was "well-aware that she had applied for th[e] refund" and received it. R.A. 9. Specifically, the MSPB explained that Ms. Dillard's August 1998 Letter requesting the amount of her retirement contribution, and the Notification of Application form that was: (1) signed by both Ms. Dillard and her husband; and (2) witnessed by an attorney who worked with her husband, supported the conclusion that Ms. Dillard knew she had applied for the

---

its action must be sustained only if . . . it is supported by a preponderance of the evidence (as defined in §1201.4(q))."

refund. R.A. 8–9; *see* R.A. 47; *see also* R.A. 40, 42–43. In addition to applying for the refund, the MSPB concluded that the OPM had processed Ms. Dillard's application and mailed a $30,630.97 check to her Georgia address, R.A. 37; *see* R.A. 59, 60, and that Ms. Dillard received and signed the check, R.A. 38−39; *see* R.A. 10. The MSPB also relied upon the OPM's records about its issuance of the check to Ms. Dillard and the fact that Ms. Dillard "deposited $15,000 into her account mere days after the refund check was issued." R.A. 9. Thus, substantial evidence supports the MSPB's determination that the OPM properly found by preponderant evidence that Ms. Dillard applied for and received her refund check and was overpaid in her interim annuity payments.

Ms. Dillard's primary counterargument is unpersuasive. Ms. Dillard argues that the OPM did not obtain the original supporting documentation, including the refund check number, even though "the U.S. Treasury Check Information System ha[s] digital check images available from October 1996 to the present." Pet'r's Br. 1. Ms. Dillard provides no evidence to support this assertion. In contrast, the OPM has provided its Refund Data Record and Master Record printout that lists Ms. Dillard's full name, her address of record, and that a signed check dated April 27, 1999 for $30,630.97 was sent to her at that address. R.A. 37; *see* R.A. 59; *see also* R.A. 38−39. Accordingly, substantial evidence supports the MSPB's conclusion that the OPM properly found by a preponderance of the evidence that Ms. Dillard was overpaid in her interim annuity payments.[6]

---

[6] Ms. Dillard briefly argues that OPM, and therefore the MSPB, erred by failing to produce any tax documents relating to the refund, and that the absence of such documentation provides evidence that she did not receive the refund. Pet'r's Br. 1. Even if true, the absence of tax

CONCLUSION

We have considered Ms. Dillard's remaining arguments and find them unpersuasive. Accordingly, the Final Decision of the Merit Systems Protection Board is

**AFFIRMED**

---

documentation relating to the refund does not detract from the overwhelming evidence supporting the MSPB's decision.