NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**HAROLD E. RUTILA, IV,**
*Petitioner*

**v.**

**DEPARTMENT OF TRANSPORTATION,**
*Respondent*

_____

2019-1712

_____

Petition for review of the Merit Systems Protection Board in No. DC-1221-18-0474-W-1.

_____

Decided: February 10, 2020

_____

HAROLD EDWARD RUTILA, IV, Canton, MI, pro se.

DOMENIQUE GRACE KIRCHNER, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by JOSEPH H. HUNT, ALLISON KIDD-MILLER, ROBERT EDWARD KIRSCHMAN, JR.

_____

Before DYK, TARANTO, and STOLL, *Circuit Judges.*

PER CURIAM.

Harold E. Rutila IV appeals a decision from the Merit Systems Protection Board ("Board") denying his request for corrective action under the Whistleblower Protection Act. We *affirm*.

## BACKGROUND

Mr. Rutila had a temporary appointment as an Air Traffic Control Specialist with the Federal Aviation Administration ("FAA"). As a condition of continued employment, he was required to take three performance evaluations that simulate real-life scenarios as part of the Initial Tower Cab Training. In May 2016, Dan Henderson administered and graded Mr. Rutila's first evaluation. Mr. Rutila challenged his score on this evaluation by filing a Technical Review ("TR"). The TR process is designed to offer trainees "an avenue to ensure points lost during a[n evaluation] are based on [relevant FAA] rules or procedures." J.A. 421. Trainee requests for TRs are evaluated by a Technical Review Panel of two supervisors.

As a result of Mr. Rutila's challenge, it was determined that Mr. Henderson erroneously deducted one point from Mr. Rutila's grade based on Mr. Rutila's failure to refer to an aircraft using specific phraseology during the simulation. Mr. Rutila regained the point and consequently passed his first evaluation. He also passed his second evaluation.

Mr. Rutila's third evaluation was administered by Michael Taylor. After completing this third evaluation, Mr. Rutila was debriefed by Mr. Taylor and Mr. Henderson, though Mr. Taylor alone ultimately graded the evaluation. Mr. Rutila received a failing score. His score on the third evaluation lowered his overall training score, which meant he could not pass the Initial Tower Cab Training. Although Mr. Rutila challenged his score on the third evaluation by filing six TRs, the TR Appeal Board denied his challenges,

and his score remained unchanged. Mr. Rutila was deemed "mathematically eliminated" from the program and, according to protocol, was terminated on May 24, 2016.

Mr. Rutila timely filed a complaint with the Office of Special Counsel ("OSC"). He alleged that he had been terminated as a reprisal for filing TRs and helping other trainees file TRs. In particular, he argued that Mr. Henderson influenced Mr. Taylor's scoring of Mr. Rutila's third evaluation in retaliation for Mr. Rutila's earlier TR filing that noted Mr. Henderson's grading error on the first evaluation. On February 16, 2018, OSC terminated its inquiry.

On April 22, 2018, Mr. Rutila appealed to the Board under the Whistleblower Protection Act, 5 U.S.C. § 2302(b)(8)–(9) ("WPA"). The Administrative Judge ("AJ") considered Mr. Rutila's filings of TRs and analyzed them as alleged grievances under § 2302(b)(9)(A), but not as alleged protected disclosures under § 2302(b)(8). It found that the filing of TRs did not constitute protected activity under § 2302(b)(9)(A). The Board also found that even if the filings of TRs had constituted protected activities, the agency had shown by clear and convincing evidence that Mr. Rutila would have been removed absent the TR filings.[1] The AJ also found that Mr. Rutila had not exhausted several of his other alleged protected disclosures before OSC. Mr. Rutila did not petition the Board for review of

---

[1] § 2302(b)(8)(A) defines protected disclosures as those made by an employee "which the employee . . . reasonably believes evidences—any violation of any law, rule, or regulation, or gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety." Section 2302(b)(9)(A)(i) defines a protected activity as "the exercise of any appeal, complaint, or grievance right granted by any law, rule, or regulation—with regard to remedying a violation of [§ 2302(b)](8)."

this decision.  The AJ's decision became the final decision of the Board.

Mr. Rutila appeals directly to this court.  We have jurisdiction under 5 U.S.C. § 7703 and 28 U.S.C. § 1295(a)(9).

## DISCUSSION

## I

A Board decision must be affirmed unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence."  5 U.S.C. § 7703(c).  Substantial evidence is "evidence that a reasonable mind may take as sufficient to establish a conclusion." *Grover v. Office of Pers. Mgmt.*, 828 F.3d 1378, 1383 (Fed. Cir. 2016).

The WPA prohibits an agency from taking a personnel action in retaliation for any whistleblowing "disclosure" or activity.  5 U.S.C. § 2302(b)(8)–(9).  An employee must show by a preponderance of the evidence that he made a protected disclosure or participated in a protected activity (such as an appeal) that contributed to a personnel action against him.  *See Whitmore v. Dep't of Labor*, 680 F.3d 1353, 1367 (Fed. Cir. 2012).  "If the employee establishes this *prima facie* case of reprisal for whistleblowing, the burden of persuasion shifts to the agency to show by clear and convincing evidence that it would have taken 'the same personnel action in the absence of such disclosure.'" *Id.* at 1364 (quoting 5 U.S.C. § 1221(e)).  The Board may consider whistleblowing charges only if the claimant first presented them "with reasonable clarity and precision" to OSC.  *Serrao v. Merit Sys. Prot. Bd.*, 95 F.3d 1569, 1577–78 (Fed. Cir. 1996); *see also* 5 U.S.C. § 1214(a)(3).

II

Mr. Rutila argues that the Board erred in finding that he had jurisdiction only under 5 U.S.C. § 2302(b)(9) and not § 2302(b)(8). He argues that, at the very least, his initial TR against Mr. Henderson constituted a protected disclosure under § 2302(b)(8)(A). That section defines protected disclosures as those made by an employee "which the employee . . . reasonably believes evidences—any violation of any law, rule, or regulation, or gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety." Section 2302(b)(9)(A)(i) defines a protected activity as "the exercise of any appeal, complaint, or grievance right granted by any law, rule, or regulation—with regard to remedying a violation of [§ 2302(b)](8)."

We need not decide whether the Board erred in finding that the filing of a TR by an employee on his own behalf is more appropriately analyzed under § 2302(b)(9) because the Board under the WPA has jurisdiction over individual rights of action under both sections, and Mr. Rutila fails to demonstrate how he was prejudiced by the Board limiting its consideration to § 2302(b)(9). Under the current version of the WPA, "an employee may file an IRA, and the Board will have jurisdiction over the appeal, if the prohibited personnel action is due to a disclosure covered by *either* § 2302(b)(8)—i.e. retaliation for whistleblowing—or § 2302(b)(9)(A)(i)—i.e. retaliation for exercising a grievance right related to whistleblowing." *Miller v. Merit Sys. Prot. Bd.*, 626 F. App'x 261, 266 (Fed. Cir. 2015). [2] We see

---

[2] Mr. Rutila argues that the Board failed to consider his assistance to two other trainees in their submission of TRs as protected disclosures and that these activities were not covered by § 2302(b)(9). Though we do not decide whether an employee's filing of a TR on his own behalf is a protected disclosure, we see no error in the Board's failure

no error in the Board's decision to proceed under § 2302(b)(8) with respect to his TR activities.

Mr. Rutila also argues that the Board erred in not finding his TRs to constitute protected activity in its analysis under 5 U.S.C. § 2302(b)(9). The Board found that Mr. Rutila's TRs did not constitute protected activity because they "contained no reference to any legal authority and could not reasonably have been interpreted as raising any concern of illegality." J.A. 6. The Board also emphasized that "the mere filing of a TR is routine in these circumstances." J.A. 9. We also need not decide if the TR appeal is a protected activity under § 2302(b)(9), because we conclude that the Board's finding that the FAA "would have terminated the appellant absent his filing of the TRs to challenge his test scores," J.A. 7, is supported by substantial evidence.

The Board concluded that the FAA had shown by clear and convincing evidence that it would have terminated Mr. Rutila even if the filings of TRs were considered to be protected under § 2302(b)(9). The Board followed the approach described in *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999). The first *Carr* factor is "the strength of the agency's evidence in support of its personnel action." *Id.* The Board highlighted the agency's evidence that Mr. Rutila in fact "misguided an airplane and mishandled the situation" during his third evaluation. J.A. 8–9. The Board also pointed out that failing the course normally leads to removal.

The second *Carr* factor is "the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision." *Carr*, 185 F.3d at 1323. The Board found that "no evidence of any retaliatory

---

to treat his assistance in others' TR filings as protected disclosures under 5 U.S.C. § 2302(b)(8).

animus against the appellant" because "the mere filing of a TR is routine." J.A. 9. In addition, Mr. Henderson's declaration indicated that "he was unaware that the appellant had filed a TR." *Id.* Similarly, the Board found that "[t]here is no evidence that either manager [who reviewed Mr. Rutila's other six TRs subsequent to his third evaluation] intended to retaliate against the appellant by declining to award him additional points." *Id.*

The third and final *Carr* factor is "any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated." *Carr*, 185 F.3d at 1323. There appears to be no evidence of similar actions against employees who are not whistleblowers. "[T]he absence of any evidence relating to *Carr* factor three can effectively remove that factor from the analysis." *Whitmore*, 680 F.3d at 1374. The Board did point out that the fact that other trainees who filed TRs against Mr. Henderson passed the training, which "undercuts [Mr. Rutila's] claim that by filing TRs he was terminated from his position." J.A. 9.

We conclude that the Board's analysis of the *Carr* factors and its finding that the FAA "would have terminated the appellant absent his filing of the TRs to challenge his test scores," J.A. 7, were supported by substantial evidence.

### III

Mr. Rutila argues that the Board should have considered two other protected disclosures in addition to the TRs: (1) a trainee feedback submission he submitted after this third evaluation and (2) his in person appeal to two supervisors regarding his third evaluation. The Board found that neither of these purported disclosures was exhausted before OSC. "The test of the sufficiency of an employee's charge of whistleblowing to OSC is the statement that the employee makes in the complaint to OSC . . . , not the employee's subsequent characterization of that statement in his appeal to the Board." *Serrao*, 95 F.3d at 1577.

The OSC complaint does not mention his trainee feedback form. And it mentions the in-person appeal not as a protected disclosure, but as a "decision" of the FAA not to allow him to retake the third evaluation. The Board thus did not err in declining to consider these disclosures.

## IV

Mr. Rutila argues that the Board improperly denied his discovery and document subpoena motions. "Procedural matters relative to discovery and evidentiary issues fall within the sound discretion of the board and its officials." *Curtin v. Office of Pers. Mgmt.*, 846 F.2d 1373, 1378 (Fed. Cir. 1988) "If an abuse of discretion did occur with respect to the discovery and evidentiary rulings, in order for petitioner to prevail on these issues he must prove that the error caused substantial harm or prejudice to his rights which could have affected the outcome of the case." *Id.* at 1379.

On August 27, 2018, Mr. Rutila filed a motion for a subpoena which sought documents and other evidence from Mr. Henderson. On October 24, 2018, Mr. Rutila moved to compel discovery of certain interrogatory responses and documents from the FAA. The AJ denied Mr. Rutila's discovery motions.

Mr. Rutila does not explain how a contrary ruling would have affected the outcome. The AJ found that there was no evidence that the agency had "failed or refused to provide the appellant with any relevant or material evidence." J.A. 2635–36.[3] The AJ's decision to deny these motions was thus not an abuse of discretion.

---

[3] To the extent Mr. Rutila's motion for issuance of a subpoena to Mr. Henderson can be read to be eliciting testimony in addition to documentary evidence, there was

## V

Mr. Rutila argues that he was deprived of his right to a hearing.  On October 25, 2018, four days before the scheduled hearing with the Board, Mr. Rutila moved for a postponement on the ground that he did not have adequate time to prepare and the AJ had not yet ruled on his two discovery motions.  On October 26, 2018, the AJ conducted a telephone conference, which was summarized on the record.  The summary indicated that Mr. Rutila "withdrew his request for a hearing."  J.A. 2632.

Mr. Rutila argues that he "felt coerced into agreeing" to waive his hearing during the telephone conference with the AJ because, absent a postponement, he "could not reasonably prepare for a hearing" that was to take place two days after the conference, and had "not even received a decision on his motion for a subpoena or motion to compel discovery" until the telephone conference.  Appellant's Br. 58–60.  Mr. Rutila failed to preserve his objection to the denial of his motion to postpone by foregoing his right to a hearing.

**AFFIRMED**

COSTS

No costs.

---

likewise no prejudice because the FAA had planned to call Mr. Henderson as a witness at the hearing.