NOTE:  This disposition is nonprecedential.

# United States Court of Appeals
# for the Federal Circuit

---

**JOSEPH H. MARTIN,**
*Petitioner*

**v.**

**DEPARTMENT OF HOMELAND SECURITY,**
*Respondent*

---

2019-1578

---

Petition for review of the Merit Systems Protection Board in No. DE-0752-17-0341-I-2.

---

Decided:  April 20, 2020

---

JEFFREY H. JACOBSON, Jacobson Law Firm, Tucson, AZ, for petitioner.

BORISLAV KUSHNIR, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent.  Also represented by JOSEPH H. HUNT, TARA K. HOGAN, ROBERT EDWARD KIRSCHMAN, JR.

---

Before NEWMAN, DYK, and WALLACH, *Circuit Judges.*

PER CURIAM.

Joseph H. Martin appeals a decision from the Merit Systems Protection Board ("Board") sustaining Mr. Martin's removal from the Department of Homeland Security, Customs and Border Protection ("DHS" or "agency"). Mr. Martin was removed for conduct unbecoming a Customs and Border Protection Officer ("CBPO" or "customs officer"), lack of candor, and failure to follow a non-disclosure warning. We *affirm*.

## BACKGROUND

Mr. Martin is a former DHS customs officer and former chapter president of the National Treasury Employees Union ("union"). In 2015, the DHS Office of Inspector General ("OIG") received complaints from two agency employees, Ms. Lozoya and Ms. Demara, that, while discussing union matters off-duty, Mr. Martin made sexually inappropriate comments to each of them about these employees' providing sexual favors to him in exchange for union services. DHS OIG opened an investigation and interviewed Ms. Lozoya and Ms. Demara. OIG then recorded, with the consent of Ms. Lozoya and Ms. Demara, Mr. Martin's telephone conversations with both employees, and made a video recording of Mr. Martin's meeting with Ms. Demara in a hotel room. In the telephone recordings, Mr. Martin referred to the employees as having an "IOU" list with him; he discussed spanking them; and he made comments such as "Who's your daddy?" and "It's your daddy." J.A. 5–6, 10, 12. During the video recording, Mr. Martin referred to one of his supervisors, Jimmy Tong, with a racial slur.

In the course of its investigation, on November 24, 2015, DHS OIG interviewed Mr. Martin. Despite being provided with a warning not to disclose investigative information, Mr. Martin sent a packet of materials related to the investigation to Mr. Tong. On February 11, 2016, during a second interview with OIG, Mr. Martin repeatedly stated that he did not "recall" or "remember" whether he

had made certain sexually suggestive or racially inappropriate comments towards employees. J.A. 20–21.

On June 12, 2017, Mr. Martin was removed from his position for charges of 1) conduct unbecoming a CBPO (three specifications); 2) lack of candor (two specifications); and 3) failure to follow a non-disclosure warning (three specifications). Mr. Martin appealed his removal to the Board. The Administrative Judge ("AJ") issued a decision on November 28, 2018, sustaining three out of the eight specifications made by the agency and determined that removal was the appropriate penalty. For the first charge of "conduct unbecoming a CBPO," the AJ found that although Mr. Martin made "crass and boorish" comments to Ms. Lozoya and Ms. Demara, he found that there was no implication that they should "provide him with sexual favors in order for him to represent" them in disputes with management. J.A 9, 14. The AJ found however that Mr. Martin's use of a racial slur regarding his supervisor had "no legitimate purpose" and sustained the charge on that ground. J.A. 15.

The second charge, "lack of candor" was sustained because the AJ found that Mr. Martin was attempting to "deflect the investigation" in testifying that he did not recall whether he had made certain sexually suggestive or racially inappropriate comments towards employees. J.A. 26. The AJ was persuaded by the fact that "these crass comments were [Mr. Martin's] everyday banter" and he thus "should have remembered making these statements." J.A. 26. The AJ was not convinced that medication contributed to Mr. Martin's lack of recollection because there was no "medical testimony" to this effect, and because his answers to other questions were "inconsistent with [Mr. Martin's] claims that the medication impacted his memory and concentration." J.A. 27.

The AJ sustained the third charge, "[f]ailure to follow [a] non-disclosure warning," because Mr. Martin "by

sending . . . documents to [Mr.] Tong, . . . disclosed investigative information to an individual outside DHS OIG and not involved in the investigation," violating the nondisclosure warning.  J.A. 31.

The AJ found that the agency did not commit an unfair labor practice by recording employees while they discussed union business, finding the recording to be "a proper exercise of management's rights."  J.A. 36.  The AJ noted that even if a union representative-bargaining unit member privilege exists in this context, it was waived by Ms. Lozoya and Ms. Demara when they agreed to the recordings.  He also found that Mr. Martin's Fourth Amendment rights were not violated because Ms. Lozoya and Ms. Demara consented to the recordings, and, moreover, that the exclusionary rule "does not apply to administrative proceedings."  J.A. 38 (quoting *Fahrenbacher v. Dep't of Veterans Affairs*, 89 M.S.P.R. 260, ¶ 14, n.5 (M.S.P.B. 2001)).  Finding a nexus between the sustained charges and the efficiency of the service, the AJ affirmed the agency's removal of Mr. Martin from federal service.

Mr. Martin did not petition the Board for review.  The AJ's decision became the final decision of the Board.  Mr. Martin seeks review directly by this court.  We have jurisdiction under 28 U.S.C. § 1295(a)(9).

## DISCUSSION

We must sustain the Board's decision unless it is: "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence."  5 U.S.C. § 7703(c).  Substantial evidence is "evidence that a reasonable mind may take as sufficient to establish a conclusion."  *Grover v. Office of Pers. Mgmt.*, 828 F.3d 1378, 1383 (Fed. Cir. 2016).

I

On appeal, Mr. Martin argues that the Board erred in considering the surveillance evidence gathered during the OIG investigation. This argument appears to only affect a single charge supporting Mr. Martin's removal, that of conduct unbecoming a CBPO, which the Board sustained for Mr. Martin's use of a racial slur in OIG's video recording. We agree with the government that the Board did not err in considering this material.

First, the fact that Mr. Martin was off-duty is not dispositive. We have previously noted that "adverse personnel actions may be taken for off-duty conduct if there is a nexus between the conduct and the 'efficiency of the service.'" *King v. Dep't of Veterans Affairs*, 248 F. App'x 192, 194 (Fed. Cir. 2007) (quoting *Allred v. Dep't of Health & Human Servs.*, 786 F.2d 1128, 1130 (Fed. Cir. 1986)). We have found "substantial evidence of a nexus" where "the incident happened at her employer's facility and involved a supervisor." *Id.* Similarly, here, as the Board noted, "the misconduct involved a fellow agency employee and involved an agency manager." J.A. 39. The Board did not err in considering Mr. Martin's off-duty conduct.

Second, Mr. Martin urges us to apply the exclusionary rule to the evidence collected by OIG in this investigation, because it was "a substantial intrusion upon [Mr. Martin's] right to privacy" under the Fourth Amendment. Reply 26. To the extent that the exclusionary rule applies to the Board's proceedings,[1] ten of our sister Circuits have

---

[1] The Supreme Court "ha[s] repeatedly declined to extend the exclusionary rule to proceedings other than criminal trials." *Pa. Bd. of Prob. & Parole v. Scott*, 524 U.S. 357, 363 (1998). The Board has held that "the Supreme Court's decisions regarding the application of the exclusionary rule to proceedings other than criminal

concluded that "government interception of oral communications [i]s permissible where one party to the conversation gave prior consent." *Holmes v. Burr*, 486 F.2d 55, 56, 58 (9th Cir. 1973). The Board correctly pointed out that Ms. Lozoya and Ms. Demara both "consented to the recordings" of Mr. Martin. J.A. 38. The Board's refusal to apply the exclusionary rule was not error.

Third, Mr. Martin argues that the Board abused its discretion in not finding that the OIG committed an unfair labor practice under 5 U.S.C. § 7116(a)(1) when it interfered with confidential conversations between a union representative and a bargaining union member. This court has not recognized a union representative-bargaining unit member privilege. To the extent that it exists, however, we hold that it does not protect union representatives from charges of misconduct based on discussions with unit member employees.

This privilege appears to originate from a decision by the Federal Labor Relations Authority ("FLRA") in *U.S. Department of the Treasury Customs Service Washington, D.C. (Respondent) & Nat'l Treasury Employees Union (Charging Party)*, 38 F.L.R.A. 1300 (Jan. 8, 1990). In that case, the privilege was recognized for the benefit of the employee: "that the employee be free to make full and frank disclosure to his or her representative in order that the employee have adequate advice and a proper defense." *Id.* at 1308 (emphasis added). In the few cases that have recognized this privilege, the privilege has been asserted for the benefit of protecting employee disclosures, not those of the union representative. *See U.S. Dep't of Justice v. Fed. Labor Relations Auth.*, 39 F.3d 361, 368–69 (D.C. Cir. 1994);

---

prosecutions do not provide a basis on which to extend the exclusionary rule to Board proceedings." *Delk v. Dep't of Interior*, No. DC0752920526-I-1, 1993 WL 190451, at *1 (M.S.P.B. June 3, 1993).

*Bell v. Vill. of Streamwood*, 806 F. Supp. 2d 1052, 1058 (N.D. Ill. 2011); *Long Beach Naval Shipyard Long Beach, California (Respondent) & Fed. Emps. Metal Trades Council AFL-CIO (Charging Party/union)*, 44 F.L.R.A. 1021, 1038 (Apr. 29, 1992). The union representative-bargaining unit member privilege is analogous to the attorney-client privilege, whose purpose is also to "to encourage full and frank communication between attorneys and their clients." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). And just as the attorney-client privilege "is that of the client, not that of the attorney," *Am. Standard Inc. v. Pfizer Inc.*, 828 F.2d 734, 745 (Fed. Cir. 1987), if there is a union representative-bargaining unit member privilege, it belongs to the employee and not the union representative. The Board thus committed no error in holding that Mr. Martin could not assert the privilege.

II

Mr. Martin additionally argues that the Board's conclusion that the agency proved lack of candor is not supported by substantial evidence. We disagree.

The Board recognized that "to constitute lack of candor, a misrepresentation or omission must have been made knowingly." J.A. 16. "Although lack of candor necessarily involves an element of deception, 'intent to deceive' is not a separate element of that offense . . . ." *Ludlum v. Dep't of Justice*, 278 F.3d 1280, 1284–85 (Fed. Cir. 2002). The charge "may involve a failure to disclose something that, in the circumstances, should have been disclosed in order to make the given statement accurate and complete." *Id.* at 1284.

The Board's conclusion that Mr. Martin lacked candor is supported by substantial evidence. The Board found that Mr. Martin was not credible in testifying that he does not recall whether he had made certain sexually suggestive or racially inappropriate comments towards employees. The Board considered the fact that "these crass comments

were [Mr. Martin's] everyday banter" and he thus "should have remembered making these statements." J.A. 26. The Board explained that Mr. Martin "had a duty to candidly admit that he used such language, then offer an explanation" and found that "[h]e elected not to do that and . . . that he did so to deflect the investigation." *Id.* (emphasis added).

Mr. Martin also faults the Board for not considering the fact that he was on medication (Bumetanide) that allegedly could cause memory loss in assessing the lack of candor charge. The Board, however, concluded that "[t]here does not appear to be a consensus that Bumetanide tablets impact memory and concentration."[2] J.A. 27. The record only shows that "trouble concentrating, confusion, [and] memory loss" may be possible side effects of this medication for "people with liver disease," which Mr. Martin admits he does not have. J.A. 27 (quoting print out from Healthline.com). Moreover, the Board considered the fact that "when the entire transcript of the interview is reviewed, there is no other portion where the appellant responds in this manner, which I find is inconsistent with his claims that the medication impacted his memory and concentration." J.A. 27. The Board thus properly considered Mr. Martin's arguments, and its findings are supported by substantial evidence.

Finally, Mr. Martin argues that the agency did not clarify which portion of the interview it was referring to in the specification of the charge and that the Board substituted its own basis for removal, rather than relying on what was identified by the agency. He also argues that the Board "abused [its] discretion by exceeding the scope of the

---

[2] Contrary to Mr. Martin's argument, the Board was not improperly shifting the burden of proof to Mr. Martin. Instead, the Board simply found that Mr. Martin did not make a sufficient showing that his memory was impaired.

proposed removal letter" in comparing Mr. Martin's answers during the interview to those of his sworn statement. Appellant's Br. 17. Neither argument is persuasive.

The charge specified the topic of the questions and described Mr. Martin's response to them:

> [D]uring an interview with Special Agents of the, [sic] DHS, OIG, you stated either "I don't recall" or "I don't remember", or words to that effect, to approximately ten (10) questions in a row asking whether you had committed certain specific acts in which you insinuated an employee must provide you sexual favors for your performance of union work on their behalf.

J.A. 20–21. Mr. Martin even admitted that he understood which portion of the interview the charge referred to. The Board thus did not substitute its own reasons for removal for those provided by the agency.

The Board also did not rely on Mr. Martin's sworn statement to uphold the charge. The Board simply considered the number of different excuses Mr. Martin provided for his evasive answers as supporting its findings that Mr. Martin was not credible. Substantial evidence supports the Board's finding that Mr. Martin lacked candor in answering certain questions during his second OIG interview.

Mr. Martin's other arguments have been considered, and we conclude that they likewise lack merit.

**AFFIRMED**