NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**JEAN KURIAKOSE,**
*Petitioner*

**v.**

**DEPARTMENT OF VETERANS AFFAIRS,**
*Respondent*

---

2019-1274

---

Petition for review of the Merit Systems Protection Board in No. CH-1221-17-0287-W-2.

---

Decided: January 17, 2020

---

ARIEL E. SOLOMON, Solomon Law Firm, PLLC, Albany, NY, for petitioner.

NATHANAEL YALE, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC for respondent. Also represented by JOSEPH H. HUNT, ALLISON KIDD-MILLER, ROBERT EDWARD KIRSCHMAN, JR.

---

Before DYK, TARANTO, and CHEN, *Circuit Judges.*

TARANTO, *Circuit Judge.*

This appeal comes to us from the Merit Systems Protection Board.  Appellant Jean Kuriakose worked as a part-time radiologist at the Department of Veterans Affairs' Health Care System in Ann Arbor, Michigan.  According to her allegations at the Board, on December 6, 2013, she was sexually assaulted by a co-worker—who, the Board subsequently found, was placed on leave by the VA as soon as the incident was reported and whose employment was terminated shortly thereafter.  In December 2014, Dr. Kuriakose resigned from her position at the VA.  In 2017, after exhausting administrative remedies, she sought corrective action from the Board under the Whistleblower Protection Enhancement Act, 5 U.S.C. § 2303 *et seq.* (WPA), based on allegations that she had made certain protected disclosures to her supervisors and been subjected to several adverse personnel actions by the VA as a result.  The Board rejected Dr. Kuriakose's request for corrective action, finding that Dr. Kuriakose had made one protected disclosure that resulted in an adverse personnel action, but that the VA proved that it would have taken that personnel action regardless of Dr. Kuriakose's protected disclosure.  Because we find no reversible error, we affirm.

I

A

Dr. Kuriakose began working at the VA as a radiologist in 2010.  The Ann Arbor VA Health Care System has an academic affiliation with the University of Michigan Medical School, and the VA's radiologists, including Dr. Kuriakose, are also on staff at the University.  Dr. Kuriakose's immediate VA supervisor was Dr. Venkataramu Krishnamurthy, and her immediate University supervisor was Dr. Ella Kazerooni.

Before the Board, Dr. Kuriakose alleged that, on December 6, 2013, at the VA facility, she was the victim of a

sexual attack—groping and exposure—by a male radiologist at the facility. J.A. 3. About a week later, Dr. Kuriakose told a radiology technician that the co-worker radiologist had exposed himself to her. *Id.* Independently, but contemporaneously, the VA questioned him about his treatment of women. *Id.* at 4. Around January 10, 2014, Dr. Kuriakose told her University supervisor, Dr. Kazerooni, about the December 6th incident. *Id.* at 4. Dr. Kazerooni immediately contacted both the police and Dr. Kuriakose's VA supervisor, Dr. Krishnamurthy; and the same day, the police began an investigation, Dr. Kuriakose filed a criminal complaint, and the VA placed the co-worker radiologist on administrative leave. *Id.* at 4–5. The VA conducted an investigation, in which it received denials from the co-worker radiologist as well as other information about his behavior toward women. *Id.* On January 21, 2014, the VA terminated his appointment, effective February 4, 2014. *Id.* at 6.

In the period just discussed, VA supervisor Dr. Krishnamurthy had been attempting to resolve Dr. Kuriakose's ongoing timekeeping issues, including her refusal to request leave for time she took off for vacation. *See* J.A. 1493–94. Around that time, Dr. Kuriakose has also alleged, she applied to be a member of the VA's Peer Review Committee and what Dr. Kuriakose refers to as the "Lung Cancer Committee." On January 13, 2014, Dr. Krishnamurthy offered to move Dr. Kuriakose's workstation away from the workstation of the co-worker she had just alleged had assaulted her the month before. Dr. Kuriakose expressed concern that moving her work station might hamper the assault investigation. Dr. Krishnamurthy assured Dr. Kuriakose that moving workstations would not affect the investigation and recommended that she move "if that would make the environment better." J.A. 1656. Dr. Kuriakose decided to remain at her then-current workstation. J.A. 143; *see* J.A. 475.

On February 26, 2014, Dr. Kuriakose met with her second-level supervisor at the VA, Dr. Eric Young. During the meeting, she discussed the assault as well as her concerns regarding how her direct supervisor, Dr. Krishnamurthy, was assigning codes to medical procedures he performed. Dr. Young informed Dr. Kuriakose that he would send a memorandum of their conversation to Dr. Krishnamurthy, and he did so on March 5, 2014. J.A. 1639.

In May 2014, the University sought to increase the professional development time allotted to its physicians for research and other scholarly activities. The University asked the VA to permit some physicians, including Dr. Kuriakose, to use up to twenty percent of their VA tour for professional development. The VA generally permitted use of only about ten percent of a physician's VA tour for professional development. Given the apparent discrepancy, the VA, through Drs. Krishnamurthy and Young, decided that the best practice was to implement a formal "Rules of Engagement" to set standards for professional development time and to clarify the relationship between the University and the VA's radiology department. J.A. 122–23. Dr. Krishnamurthy placed Dr. Kuriakose's professional development time on hold until the Rules of Engagement were officially implemented. On August 11, 2014, Dr. Krishnamurthy approved Dr. Kuriakose's request to use professional development time to participate in a COPDGene study.

On September 12, 2014, Dr. Kuriakose told Dr. Young that another VA co-worker, Dr. David Jamadar, had made inappropriate comments to her during an argument. She alleges that she later overheard Dr. Jamadar making derogatory comments about her on October 2, 2014.

On October 10, 2014, Dr. Kuriakose asked Dr. Krishnamurthy if she could attend a training session related to the COPDGene study. Dr. Kazerooni also needed to approve Dr. Kuriakose's participation in the session. According to an email exchange between Drs. Krishnamurthy and

Kazerooni, Dr. Kuriakose had to find other doctors to cover the shifts that she would miss while attending the session; and Dr. Kazerooni stated that she would withhold her official approval until after Dr. Kuriakose had obtained proper coverage for her shifts. J.A. 30–31; J.A. 1610. Dr. Kuriakose asked Dr. Krishnamurthy for permission to move one patient to another time and close off the patient's previous time slot so that she could care for the patient before leaving for her training and so that no patients would be scheduled while she was at the training session, but Dr. Krishnamurthy did not do so. J.A. 508.

On October 14, 2014, four staff radiologists reported to Dr. Young that Dr. Kuriakose was causing an uncomfortable environment, noting that they tried to limit communication and interactions with her. Dr. Young began investigating the working environment of the radiology department. When radiology staff members were asked if they had seen or experienced any hostility in the workplace, Dr. Kuriakose's name was the only one mentioned several times.

On November 28, 2014, Dr. Kuriakose sent Dr. Young an email that included a notice of resignation. Dr. Kuriakose sent a formal letter of resignation to both the VA and the University on December 10, 2014. Her resignations became effective on December 28, 2014. Dr. Kuriakose's husband began a new out-of-state job on January 5, 2015, and Dr. Kuriakose joined him out of state after her resignations became effective.

B

On January 23, 2015, Dr. Kuriakose filed a complaint with the Office of Special Counsel (OSC) pursuant to 5 U.S.C. § 1214(a), seeking corrective action for alleged prohibited personnel practices. J.A. 1760–70. Specifically, Dr. Kuriakose alleged that from October 2012 to February 2014, she had made numerous protected disclosures indicating that VA doctors were abusing their authority,

committing gross mismanagement, violating laws or rules, and creating substantial and specific dangers to public health and safety. J.A. 1761–64. She also alleged that, as a result of her protected disclosures, the VA subjected her to certain retaliatory adverse personnel actions, namely: (1) a letter from Dr. Krishnamurthy to Dr. Kazerooni disparaging her; (2) denial of membership on VA committees necessary for promotion and advancement; (3) a reduction in professional development time; (4) interference with her promotion to Assistant Professor at the University; (5) isolation from other VA staff; and (6) denial of patient coverage needed to enable her to attend the COPDGene study training session. J.A. 1765–66. Dr. Kuriakose later added an additional allegation of constructive termination resulting from a hostile work environment. *See* J.A. 1727.

About two years later, on January 6, 2017, OSC provided Dr. Kuriakose with a letter containing proposed factual and legal determinations pursuant to 5 U.S.C. § 1213(c). J.A. 1726–27. Dr. Kuriakose did not respond to OSC's letter. *See* J.A. 1728. On January 20, 2017, OSC provided Dr. Kuriakose with a closure letter, terminated its inquiry, and notified Dr. Kuriakose that she had exhausted her claims before OSC and that she had a right to file an individual right of action with the Board to request corrective action pursuant to 5 U.S.C. §§ 1214(a)(3) and 1221. J.A. 1728; J.A. 1730–31; *see* 5 C.F.R. § 1209.5.

C

Dr. Kuriakose timely filed an appeal with the Board. On August 31, 2017, Administrative Judge Chase found that Dr. Kuriakose was entitled to a hearing. J.A. 1692. On June 13, 2018, Administrative Judge Puglia held a prehearing conference at which she ruled that the Board lacked jurisdiction over Dr. Kuriakose's constructive-termination claim. *See* J.A. 1222. Administrative Judge Puglia also denied Dr. Kuriakose's request to call Drs. Kazerooni, Pernicano, and Kaza as witnesses, finding their

proposed testimony "immaterial." *See* J.A. 1224. The rulings were set out in a prehearing order dated June 15, 2018. J.A. 1221–24.

Dr. Kuriakose filed a motion for certification of interlocutory appeal to the Board on June 21, 2018, seeking confirmation of Board jurisdiction over her constructive-termination claim. J.A. 1217–19. The next day, Dr. Kuriakose filed an objection to the prehearing order. J.A. 1201–03. On June 22, 2018, the administrative judge denied the motion and clarified that the Board did in fact have jurisdiction to hear Dr. Kuriakose's constructive-termination claim, as the claim had been included in OSC's closure letter to Dr. Kuriakose. J.A. 1213–14.

The administrative judge held a two-day hearing on June 25 and 26, 2018. During the hearing, Administrative Judge Puglia stated that she would hear evidence of a hostile work environment only to adjudicate Dr. Kuriakose's constructive-termination claim, not as its own separate claim. J.A. 285–87. Administrative Judge Puglia also excluded testimony regarding Dr. Krishnamurthy's character and other employees' complaints about Dr. Krishnamurthy. *E.g.*, J.A. 239–41; J.A. 278–81.

The administrative judge issued an initial decision on August 27, 2018, J.A. 1–39, which became the final decision of the Board on October 1, 2018, and for that reason we will hereafter generally refer to the administrative judge as the Board. The Board found that Dr. Kuriakose had made a protected disclosure to Dr. Young during their February 26, 2014 meeting, that the subsequent reduction in professional development time was an adverse personnel action, and that the protected disclosure was a contributing factor to the reduction in professional development time (because of the knowledge/timing test). J.A. 27–28; J.A. 31–32; J.A. 36. The Board found, however, that the VA had proven by clear and convincing evidence that it would have reduced Dr. Kuriakose's professional development time regardless

of her protected disclosure because the reduced professional development time applied to all VA physicians. J.A. 37–39.

The Board found that Dr. Kuriakose's remaining alleged personnel actions all failed even before the stage at which it fell to the VA to prove that it would have taken the action regardless of the alleged protected disclosure. In particular, the Board found that Dr. Kuriakose was unable to attend the COPDGene study training session because of her own failure to obtain patient-care coverage, not because of a VA personnel action. J.A. 30–31. The Board also found that the alleged interference with Dr. Kuriakose's promotion at the University is not a covered personnel action under the WPA. J.A. 31. The Board further found that Dr. Kuriakose failed to "establish that she requested to join any VA committees from December 2013 [the date of her alleged attack predating her protected disclosure] to December 2014 [the date of her formal resignation]." J.A. 32.

Finally, the Board found that Dr. Kuriakose had not proven her constructive-termination claim because she had failed to rebut the presumption that her resignation was voluntary. J.A. 34–36. The Board recognized Dr. Kuriakose's sense of isolation from and difficulty communicating with her co-workers and her resulting concerns for patient safety, but it also found that she had received a "satisfactory" performance evaluation before her resignation and was considered a valuable member of the radiology department. J.A. 35–36. The Board also acknowledged Dr. Kuriakose's allegation that Dr. Jamadar had yelled at her during an argument in September 2014. J.A. 35. The Board observed, as well, that Dr. Kuriakose's resignation did not become effective until one month after her initial notice of resignation, that her husband had recently accepted a new job in another state, and that she had simultaneously resigned from the University even though she did not find the work environment at the University intolerable. J.A. 35.

Dr. Kuriakose timely appealed to this court. We have jurisdiction under 5 U.S.C. § 7703 and 28 U.S.C. § 1295(a)(9).

## II

A Board decision must be affirmed unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). Substantial evidence is "evidence that a reasonable mind may take as sufficient to establish a conclusion." *Grover v. Office of Pers. Mgmt.*, 828 F.3d 1378, 1383 (Fed. Cir. 2016).

The WPA prohibits an agency from taking a personnel action in retaliation for any whistleblowing "disclosure" or activity. 5 U.S.C. § 2302(b)(8)–(9). An employee in Dr. Kuriakose's position has to show by a preponderance of the evidence that she made a protected disclosure that contributed to a personnel action against her. *See Whitmore v. Dep't of Labor*, 680 F.3d 1353, 1367 (Fed. Cir. 2012). "If the employee establishes this *prima facie* case of reprisal for whistleblowing, the burden of persuasion shifts to the agency to show by clear and convincing evidence that it would have taken 'the same personnel action in the absence of such disclosure.'" *Id.* at 1364 (quoting 5 U.S.C. § 1221(e)). If the agency does not make that showing, the agency's personnel action must be set aside. *See Siler v. Envtl. Prot. Agency*, 908 F.3d 1291, 1298 (Fed. Cir. 2018). The Board may consider whistleblowing charges only if the claimant presented them to OSC. 5 U.S.C. § 1214(a)(3); *Ward v. M.S.P.B.*, 981 F.2d 521, 526 (Fed. Cir. 1992).

## III

Dr. Kuriakose presents several challenges to the Board's findings and evidentiary rulings. We do not find these challenges persuasive.

A

As an initial matter, we reject Dr. Kuriakose's contention that she lacked notice adequate to enable her to present her constructive-termination claim. On June 13, 2018, after a year of preparations, and shortly before the hearing was to occur, the administrative judge stated that the Board lacked jurisdiction over Dr. Kuriakose's constructive-termination claim. Dr. Kuriakose immediately challenged that ruling, and the administrative judge changed her conclusion nine days later, with the hearing taking place three days after that. Dr. Kuriakose has not shown that the nine-day period of scope restriction, during which the restriction was actively being contested, prejudiced her ability to present the constructive-termination claim.

Nor has she shown prejudice from the absence of written confirmation of the burdens of proof or the elements necessary to prove her claim. Dr. Kuriakose laid out the burdens and her proffered evidence in an earlier response to the Board's initial jurisdictional order. J.A. 1709–11. Dr. Kuriakose has not identified any additional evidence or arguments that she would have relied on had she been given written confirmation of the burden of proof and elements to be proven. *See Wynn v. U.S. Postal Serv.*, 115 M.S.P.R. 146, 150–51 (2010) ("When an administrative judge fails to inform the parties of their burden and methods of proof, the Board typically remands the appeal so the administrative judge can afford such notice and an *opportunity to submit evidence and argument under the proper standard*." (emphasis added)).

Dr. Kuriakose also argues that the Board erred in not considering a separate claim of hostile work environment. OSC's January 6, 2017 letter, however, confirms that she relied on a hostile work environment only as part of a constructive-termination claim, not as a separate claim. J.A. 1727 (discussing Dr. Kuriakose's claim that "agency

officials subjected [her] to a hostile work environment, leaving [her] no choice but to resign"). The Board thus lacked jurisdiction over a separate hostile work environment claim. 5 U.S.C. § 1214(a)(3); *see Ward*, 981 F.2d at 526.

## B

Dr. Kuriakose argues that a number of the Board's findings are not supported by substantial evidence. We disagree.

### 1

Cutting an employee off from training may be a covered personnel action if the training "may reasonably be expected to lead to an appointment, promotion, performance evaluation, or other [covered personnel action]." 5 U.S.C. § 2302(a)(2)(A)(ix). Dr. Kuriakose challenges the Board's findings about her effort to attend the COPDGene study training session. We reject the challenge.

The Board thoroughly reviewed the testimony and documentary evidence regarding Dr. Kuriakose's failure to obtain patient-care coverage that would free her to attend the COPDGene study training session. J.A. 30–31. Email communications show that it was Dr. Kuriakose's responsibility to obtain coverage for her VA shifts in order to attend the session. J.A. 1610 (email from Dr. Kazerooni to Dr. Krishnamurthy noting that Dr. Kazerooni "told [Dr. Kuriakose] to arrange coverage" and that Dr. Kazerooni would "only sign off on [her] end once the coverage arrangements [we]re sent to [her]"). Dr. Kuriakose was aware of this responsibility. J.A. 507. Indeed, she asked Dr. Krishnamurthy to close off a slot that would have allowed Dr. Kuriakose to perform a procedure on one of her patients before she left for her training. J.A. 508. Dr. Krishnamurthy testified that he did not close off the slot because the physician schedule had already been set by the time Dr. Kuriakose made the request. J.A. 129–30. The Board

reasonably found, based on this evidence, that Dr. Kuriakose had not proven that the VA prevented her from attending the COPDGene study training session.

Dr. Kuriakose faults the Board for relying on some of Dr. Krishnamurthy's testimony without considering an alleged inconsistency. All that Dr. Kuriakose cites, however, is a possible minor inconsistency that is not specifically about the effort to attend the COPDGene study training session. *See* J.A. 124; J.A. 1164. The Board was entitled to make credibility determinations, and the decision to credit the key testimony of Dr. Krishnamurthy was not an abuse of that discretion. *See Bieber v. Dep't of the Army*, 287 F.3d 1358, 1364 (Fed. Cir. 2002).

2

Substantial evidence also supports the Board's determination that Dr. Kuriakose failed to prove that her departure from the VA was something other than the voluntary resignation that it was on its face. "Resignations are presumed voluntary, and the burden of showing that the resignation was involuntary is on the petitioner." *Terban v. Dep't of Energy*, 216 F.3d 1021, 1024 (Fed. Cir. 2000). Our cases look at the circumstances, objectively considered, and focus on whether the resignation was shown to have resulted from misinformation, deception, or coercion by the agency. *Id.*

Here, Dr. Kuriakose notified Dr. Young of her impending resignation in late November 2014, but did not send a formal letter until mid-December, and the resignation took effect on December 28, 2014. J.A. 17; J.A. 1596. The Board could properly consider it significant that Dr. Kuriakose's husband began a new out-of-state job approximately one week after Dr. Kuriakose's resignation became effective. J.A. 35; J.A. 547–48. In addition, Dr. Kuriakose simultaneously resigned from her position at the University even though she testified that the working conditions at the University were not intolerable. J.A. 522–23.

The Board properly determined that the events to which Dr. Kuriakose points do not add up to intolerable conditions that would make her resignation involuntary. Although Dr. Kuriakose had concerns that her difficult working environment negatively affected her patients' safety, the evidence shows that she was objectively providing satisfactory care and meeting deadlines. J.A. 35–36; J.A. 136; J.A. 499. Difficulties in getting along with co-workers do not on their own amount to an objectively intolerable work environment. *See Miller v. Dep't of Defense*, 85 M.S.P.R. 310, ¶ 32 (2000). And that conclusion is not undermined by the alleged remarks of Dr. Jamadar to her in September 2014 (or about her shortly thereafter).

Nor is a different conclusion supported by the evidence concerning the VA's attempt to move her workstation. To the extent that Dr. Kuriakose is arguing that the attempt to move workstations was itself a personnel action, she did not so allege in her complaint to OSC and cannot raise such a challenge before this court for the first time. 5 U.S.C. § 1214(a)(3); *see* J.A. 1727. To the extent that she is arguing that the attempt to move workstations contributed to her intolerable work environment, record evidence does not support her allegation. Dr. Krishnamurthy offered to have Dr. Kuriakose's workstation moved *if* she felt that the move would improve her environment; Dr. Kuriakose declined; and she was not in fact required to move her workstation. J.A. 7; J.A. 143–44; J.A. 475; J.A. 1656. That incident does not justify finding an objectively intolerable work environment, even when considered with the other facts.

Dr. Kuriakose also takes issue with the Board's assessment of the timekeeping and leave procedures to which Dr. Kuriakose was subjected. Dr. Kuriakose did not separately allege changes in timekeeping and leave policies as a personnel action in her complaint to OSC and cannot raise the issue for the first time here. 5 U.S.C. § 1214(a)(3); *see* J.A. 1727. To the extent that Dr. Kuriakose argues that changes in timekeeping and leave policies contributed to

an intolerable work environment, that allegation is unsupported by the record.  Dr. Krishnamurthy had repeatedly expressed concerns that Dr. Kuriakose was not following the VA's rules for timekeeping and leave.  J.A. 7; J.A. 1493–94.  Dr. Kuriakose has not alleged that the rules applied to her were any different from the rules applied to all VA physicians.  Requiring her to comply with the agency's rules is not evidence of an objectively intolerable work environment.

3

Dr. Kuriakose also disagrees with the credibility determinations made by the Board regarding Dr. Kuriakose's exclusion from VA committees and her isolation from co-workers.  We give great deference to such credibility determinations.  *Bieber*, 287 F.3d at 1364.  We see no reversible error here.

The Board found that there were no requests to join committees in the relevant time period.  J.A. 32.  Its decision in that respect is supported by substantial evidence.

Nor did the Board err in assessing Dr. Kuriakose's testimony that she was isolated from co-workers.  In fact, the Board credited Dr. Kuriakose's testimony on this topic, noting that she had "demonstrated that colleagues avoided interacting with her."  J.A. 35–36.  But, as discussed above, the Board properly found that this did not rise to the level of a constructive termination, noting, among other things, Dr. Kuriakose's own role in her isolation, evinced by the information Dr. Young received on the subject.  J.A. 1592; J.A. 1606–08.  And even with the noted isolation, Dr. Kuriakose received "satisfactory" performance reviews, was considered a "valuable member" of the radiology team by Dr. Krishnamurthy, and met patient deadlines.  J.A. 35; J.A. 136; J.A. 499.  There is no error in the Board's assessment of the evidence on this topic.

4

Finally, Dr. Kuriakose argues that an allegedly disparaging letter from the VA to the University in 2013 constituted a personnel action. Dr. Kuriakose has not challenged the Board's finding that her only protected disclosure was to Dr. Young on February 26, 2014. Any actions before that date, including the 2013 letter, cannot be retaliatory personnel actions. J.A. 31; J.A. 1712. Further, a disparaging letter without more is not a personnel action under 5 U.S.C. § 2302(a). Dr. Kuriakose's additional allegations that the VA otherwise interfered with her advancement at the University are not supported by record evidence.

C

Dr. Kuriakose argues that the Board overlooked several pieces of significant evidence. *See Whitmore*, 680 F.3d at 1376 (noting duty to consider evidence). We disagree.

Regarding Dr. Kuriakose's claim that the VA prevented her from attending the COPDGene study training session, she argues that the Board did not consider the fact that Dr. Kuriakose could not attend the training session because Dr. Krishnamurthy failed to close off a slot for her if she moved a patient from that slot to complete the patient's treatment before she left for the training session. But the Board did consider that fact, as discussed above. J.A. 30–31.

With respect to the constructive-termination claim, Dr. Kuriakose argues that the Board did not consider (1) the totality of circumstances, (2) the offer to move her work station, (3) evidence regarding her date of resignation, (4) the impact that her work environment had on patient care, (5) changes in timekeeping and leave practices, (6) an overall change in working conditions, (7) Dr. Jamadar's allegedly derogatory comments and behavior, (8) Dr. Young's investigation into other radiology staff's complaints about Dr.

Kuriakose, (9) her exclusion from VA committees, and (10) interference with promotion at the University.

Several of Dr. Kuriakose's arguments go to the weight the Board gave to the evidence. Those arguments have already been reviewed above. And we see no failure of the Board to consider all the relevant circumstances in ruling on the constructive-termination claim. The Board considered Dr. Krishnamurthy's offer for Dr. Kuriakose to move workstations (J.A. 7–9), the timing of Dr. Kuriakose's resignation (J.A. 35), allegations of discrimination as far back as 2012 (J.A. 35), Dr. Kuriakose's concerns for patient safety (J.A. 35), the particular timekeeping and leave procedures put in place to help Dr. Kuriakose comply with the VA's requirements (J.A. 7, 17), whether Dr. Kuriakose had objectively experienced a change in working conditions (J.A. 35), allegedly derogatory comments made by Dr. Jamadar (J.A. 12–15, 35), Dr. Kuriakose's feelings of isolation and poor communication with her co-workers (J.A. 36), Dr. Young's investigation into Dr. Kuriakose's interactions with her co-workers (J.A. 35–36), whether Dr. Kuriakose was excluded from VA committees (J.A. 32–34), and whether the VA interfered with Dr. Kuriakose's promotion at the University (J.A. 31). That the Board did not find this evidence persuasive does not mean that it failed to consider it.

D

The Board, and specifically an administrative judge, may exclude witness testimony and evidence that is irrelevant, immaterial, or repetitious, and we review such exclusion for abuse of discretion. 5 C.F.R. § 1201.41(b)(10); *Curtin v. Office of Pers. Mgmt.*, 846 F.2d 1373, 1378 (Fed. Cir. 1988) ("Procedural matters relative to discovery and evidentiary issues fall within the sound discretion of the board and its officials."). Even if there were an abuse of discretion in excluding witnesses or testimony, Dr. Kuriakose could obtain relief here only by showing that the error

caused "substantial harm or prejudice to [her] rights which could have affected the outcome of the case." *Id.* at 1379. Dr. Kuriakose challenges the Board's exclusion of Drs. Kazerooni, Pernicano, and Kaza from testifying at Dr. Kuriakose's hearing. J.A. 1224. She also challenges the exclusion of certain evidence regarding retaliatory animus and harassment. For the reasons discussed below, we do not find any of these challenges persuasive.

1

The Board did not err in excluding Dr. Kuriakose's University supervisor, Dr. Kazerooni, who, Dr. Kuriakose said, would testify about "her communications with the VA on Dr. Kuriakose's behalf regarding allegations of sexual harassment and whistleblower retaliation." J.A. 1538. Dr. Kuriakose now claims that Dr. Kazerooni also could have testified about the specific incidents that Dr. Kuriakose alleges led to her constructive termination, including the reduction in professional development time, denial of training, harassment by co-workers, the totality of the circumstances experienced by Dr. Kuriakose, the timing of Dr. Kuriakose's resignation, and interference with Dr. Kuriakose's promotion at the University. Dr. Kazerooni, however, is not an employee of the VA, and Dr. Kuriakose has not shown what information on the above-described topics she could supply that was from personal knowledge, was relevant, and was not duplicative of Dr. Kuriakose's and other witnesses' testimony. Dr. Kazerooni might have personal knowledge of and non-duplicative testimony about the alleged interference with Dr. Kuriakose's promotion at the University, but as discussed above, the Board properly found that the alleged interference was not a personnel action covered by 5 U.S.C. § 2302(a). Testimony from Dr. Kazerooni on that topic could not have changed the Board's conclusion.

2

Dr. Kuriakose sought to have Dr. Perry Pernicano, one of her VA co-workers, testify about "retaliatory actions taken against Dr. Kuriakose following her protected disclosures." J.A. 1537. Dr. Kuriakose now claims that Dr. Pernicano's testimony was necessary to show that she followed proper procedures for obtaining patient-care coverage prior to the COPDGene study training session, that she was excluded from the Lung Cancer Committee, and that she was subjected to derogatory comments and isolation by her co-workers. The facts about those topics were all in the record before the Board and discussed by other witnesses, including Dr. Kuriakose. J.A. 30–33; J.A. 36. There is no indication that the Board discounted Dr. Kuriakose's account of those incidents for lack of corroboration. Further, the Board found that Dr. Kuriakose failed to obtain coverage for herself and failed to show that she had actually applied to the Lung Cancer Committee. J.A. 30–33. Dr. Kuriakose has not made a persuasive showing that Dr. Pernicano had specific testimony to offer that could reasonably have altered the assessment of the facts. Finally, the Board in fact credited Dr. Kuriakose's testimony that she was subjected to derogatory comments and was isolated from her co-workers. J.A. 35–36. Additional testimony by Dr. Pernicano would have been duplicative on that point and could not have changed the decision.

3

Dr. Kuriakose sought to have Dr. Asha Kaza, another VA co-worker, testify about "how the VA, and Eric Young handled her disclosures of sexual harassment and the subsequent acts of retaliation taken against her." J.A. 1537. Dr. Kuriakose now claims that Dr. Kaza also would have testified about the overall work environment at the VA, the state of the workstation offered to Dr. Kuriakose, and the VA's retaliatory animus toward Dr. Kaza after a protected disclosure. But there was ample other testimony about the

VA work environment and workstations, including from Dr. Kuriakose, and there is no indication that the Board discounted Dr. Kuriakose's testimony about those matters for lack of corroboration. J.A. 7; J.A. 34–36. Dr. Kuriakose has not shown that Dr. Kaza's testimony would have added something significant to the facts about the environment Dr. Kuriakose experienced.

We also see no abuse of discretion in excluding the suggested testimony about retaliation against Dr. Kaza for her disclosures of sexual harassment. "[W]hen determining whether an agency has shown by clear and convincing evidence that it would have taken the same personnel action in the absence of whistleblowing, it will consider . . . the strength of the agency's evidence in support of its personnel action; the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated." *Carr v. Social Security Admin.*, 185 F.3d 1318, 1323 (Fed. Cir. 1999). Here, the Board could conclude that Dr. Kuriakose had not shown that Dr. Kaza was similarly situated to Dr. Kuriakose. *Compare Sharpe v. Dep't of Justice*, 916 F.3d 1376, 1380 (Fed. Cir. 2019) (evidence of hostility toward similarly situated reservist was relevant evidence in a Uniformed Services Employment and Reemployment Rights Act case). Moreover, evidence of retaliatory animus bears on whether the agency would have taken a personnel action regardless of the appellant's protected disclosure. *Carr*, 185 F.3d at 1323. In this case, that issue is focused on one personnel action—the reduction in professional development time for Dr. Kuriakose. The Board could properly conclude, in the exercise of its discretion about the bounds of the proceeding, that Dr. Kaza's testimony about a retaliatory animus with respect to other personnel actions against others was too remote in significance to the issue presented here and could not have changed the decision.

4

Dr. Kuriakose's challenges to the exclusion of certain testimony regarding other employees' complaints about Dr. Krishnamurthy, J.A. 239–40; J.A. 278–81, are unavailing for essentially the reasons noted above with respect to exclusion of Dr. Kaza's testimony. Dr. Kuriakose's argument that the Board improperly excluded testimony regarding harassment from before 2014 mischaracterizes the record. At the hearing, during a colloquy about training and leave at the VA, the Board merely directed that the testimony be focused on the relevant timeframe. J.A. 420–21. And the Board's decision notes that Dr. Kuriakose had complained of harassment since 2012. J.A. 35.

IV

For the forgoing reasons, we affirm the decision of the Board.

The parties shall bear their own costs.

**AFFIRMED**